## SMOLEN v DAHLMANN APARTMENTS, LTD

Docket No. 59750. Submitted December 15, 1982, at Lansing.—Decided July 11, 1983. Leave to appeal applied for.

Plaintiffs, Mike Smolen and Peter Micklonis, leased an apartment from defendant Green Terrace Associates in an apartment complex managed by defendant Dahlmann Apartments, Ltd. The lease required a security deposit and subjected refund of the deposit to the conditions of no damage to the property beyond ordinary wear and tear resulting from careful usage and that the entire apartment shall have been cleaned. Plaintiffs vacated the apartment on September 10, 1979, upon expiration of the lease. Within 30 days they received a check from Green Terrace Associates for the amount of their security deposit less $37.50. An enclosed damage list indicated that the amount retained was charged against the security deposit to reimburse Green Terrace Associates for the expense of cleaning the apartment. Plaintiffs did not object to the retention of their deposit for this purpose until January 22, 1980, when they instituted this class action in the Washtenaw Circuit Court on behalf of themselves and all others similarly situated. Plaintiffs alleged that the deduction of funds from their security deposit to offset the cost of cleaning their apartment violated the landlord-tenant relationship act (LTRA) and the Michigan Con-

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur 2d, Landlord and Tenant § 651.
  Right of lessor to retain advance rental payments made under lease terms upon lessee's default in rent. 27 ALR2d 656.
[2, 5, 6] 49 Am Jur 2d, Landlord and Tenant § 948.
[3, 8] 73 Am Jur 2d, Statutes §§ 145, 146, 225.
[4] 22 Am Jur 2d, Damages § 1.
[7] 49 Am Jur 2d, Landlord and Tenant § 977.
[8] 73 Am Jur 2d, Statutes §§ 265, 306.
[9, 10] 1 Am Jur 2d, Actions § 56.
  20 Am Jur 2d, Courts § 81.
[11] 59 Am Jur 2d, Parties § 71.
[12] 59 Am Jur 2d, Parties § 80.
  Appealability of order allowing action to proceed as class action under Rule 23 of Federal Rules of Civil Procedure. 32 ALR Fed 674.

sumer Protection Act (MCPA). Defendants moved for summary judgment arguing that plaintiffs' claim was barred as a result of their failure to object to the cleaning charge in a timely fashion. Plaintiffs filed a request for admissions, seeking admissions that defendants, in the regular course of their business, made claims for cleaning expenses against the security deposits of at least 30 other tenants. Plaintiffs also moved for class certification and partial summary judgment. Defendants then tendered a certified check for $37.50 but plaintiffs refused the tender. Defendants then filed another motion for summary judgment, contending that their tender rendered plaintiffs' claims moot and that their case was not suitable for class treatment. The above motions were thereafter argued, however, plaintiffs withdrew their motion for class certification, having been unable to obtain discovery by the time of the hearing. At the close of the hearing, the trial court took the motions under advisement. On August 19, 1980, the trial court, Henry T. Conlin, J., rendered an opinion and order granting the defendants' motion for summary judgment. Plaintiffs appeal alleging several errors. *Held:*

1. A landlord may not use a tenant's security deposit for any purpose other than those listed in the LTRA. The LTRA provides that a security deposit can only be used to pay for actual damages to the premises. A rental unit which requires cleaning has not been damaged. While a grimy wall, soiled carpet and a stained couch are all unattractive, the wall, carpet and couch themselves have not been injured. Thus, the Legislature could not have intended that a rental unit which needs cleaning has suffered damages under the LTRA. The LTRA contemplates that damage is the sort of condition remedied by repair. An item which is cleaned has not been repaired. Nor has that item been damaged. Section 7 of the LTRA forbids a landlord from deducting cleaning expenses from a tenant's security deposit.

2. Since a landlord may not claim cleaning expenses against a tenant's security deposit a tenant is entitled to that portion of his security deposit kept by the landlord for that purpose. Therefore, a landlord who retains part of a tenant's security deposit for cleaning violates § 3 of the MCPA which proscribes the failure to promptly restore any deposit to the person entitled thereto.

3. The trial court erred in ruling that the plaintiffs, by failing to respond in a timely fashion to the defendants' notice of damages, forfeited their claims that the defendants improperly retained part of their security deposit to defer cleaning expen-

ses. The landlord's damage list may include only damages for which the security deposit may be used. A tenant who fails to respond within seven days from receipt of the list of damages does not forfeit an amount claimed for cleaning the rental unit.

4. The trial court erred in holding that the defendants' tender of $37.50 to the plaintiffs rendered their case moot. Plaintiffs sought more in monetary compensation than the amount tendered and also sought injunctive relief. The case was not rendered moot since the plaintiffs had not been made whole.

5. The trial court erred in ruling that the plaintiffs were inadequate class representatives.

6. The trial court erred in concluding prior to allowing discovery that this action was inappropriate for class treatment. Before a trial court rules on the class action question it must give the representative plaintiff a fair opportunity to develop the facts necessary to show that his case is suitable for class action treatment. Plaintiffs were not afforded such an opportunity.

Reversed and remanded.

1. LANDLORD AND TENANT — SECURITY DEPOSIT.

A landlord may not use a tenant's security deposit for any purposes other than those listed in the landlord-tenant relationship act (MCL 554.607; MSA 26.1138[7]).

2. LANDLORD AND TENANT — SECURITY DEPOSIT — DAMAGES — CLEANING.

A rental unit which requires only cleaning after the termination of occupancy has not suffered "damages" under the landlord-tenant relationship act; therefore, a landlord is prohibited from retaining a portion of a tenant's security deposit to pay for the cost of cleaning the rental unit (MCL 554.607; MSA 26.1138[7]).

3. STATUTES — JUDICIAL CONSTRUCTION.

The Court of Appeals primary objective in construing a statutory provision is to divine the Legislature's intent; a term is to be given its plain and ordinary meaning where it is not defined by the statute; the Legislature's intent may also be determined by considering the use of the term elsewhere in the statute.

4. WORDS AND PHRASES — DAMAGE.

The ordinary meaning of "damage" is that of injury to something; "damage" is defined as loss or harm resulting from injury to person, property or reputation.

5. LANDLORD AND TENANT — DAMAGE — CLEANING.

The landlord-tenant relationship act contemplates that "damage" is the sort of condition remedied by repair; an item which is cleaned has not been repaired, nor has that item been actually damaged (MCL 554.607, 554.609; MSA 26.1138[7], 26.1138[9]).

6. LANDLORD AND TENANT — CONSUMER PROTECTION ACT — SECURITY DEPOSIT — CLEANING.

A landlord violates the Michigan Consumer Protection Act where he retains a part of his tenant's security deposit to defer the expense of cleaning the rental unit (MCL 445.903[1][u]; MSA 19.418[3][1][u]).

7. LANDLORD AND TENANT — SECURITY DEPOSIT — NOTICE OF DAMAGE.

A landlord who has claims against the security deposit of a tenant must submit an itemized list of damages to the tenant within 30 days from the termination of occupancy where the tenant has properly notified the landlord of his new address; the tenant must respond to such notice within seven days after receipt of the list or forfeit the amount claimed for damages; such damage list may only include damages for which the security deposit may be used, therefore, a tenant who fails to respond within seven days does not forfeit any of the amount claimed for damages for which the security deposit may not be used (MCL 554.607, 554.609, 554.611; MSA 26.1138[7], 26.1138[9], 26.1138[11]).

8. STATUTES — JUDICIAL CONSTRUCTION.

A statute should be construed so as to avoid, not produce, absurd consequences and to implement, not frustrate, the legislative purpose of the statute.

9. ACTIONS — MOOT ACTIONS.

A case generally becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome; a court does not lose jurisdiction over a case that has become moot, instead, mootness reflects a policy of judicial self-restraint which prevents the litigation of issues whose outcome has ceased to be of any importance.

10. ACTIONS — MOOT ACTIONS.

A case is generally rendered moot when the plaintiff has been made whole; however, when other remedies sought are not moot, the underlying issue may be decided.

11. PARTIES — CLASS ACTION — ADEQUATE REPRESENTATION.

A named plaintiff seeking to represent a class in a class action is an adequate class representative only if he will pursue the rights of the class vigorously through qualified counsel.

12. PARTIES — CLASS ACTION — COURT RULES.

In order to bring a class action the members of the class must be so numerous that joinder of all members is impractical; a trial court must give the representative plaintiff a fair opportunity to develop the facts necessary to show that his case is suitable for class action treatment before it rules on the class action question (GCR 1963, 208.1).

*Gary M. Victor,* for plaintiffs.

*Steven Zarnowitz,* for defendants.

Before: R. M. MAHER, P.J., and D. E. HOLBROOK, JR., and P. J. MARUTIAK,* JJ.

R. M. MAHER, P.J Plaintiffs appeal from the trial court's order granting the defendants' motion for summary judgment. Apparently, the motion was brought pursuant to GCR 1963, 117.2(3).

The facts are undisputed. Plaintiffs leased an apartment from defendant Green Terrace Associates in the Green Terrace Apartments complex in Ypsilanti. Defendant Dahlmann Apartments, Ltd., managed the complex. The lease required a $420 security deposit and subjected refund of the deposit to the following conditions:

"b. No damage to property beyond ordinary wear and tear resulting from careful usage.
"c. The entire apartment including range, refrigerator, bathroom, closet and cupboards have been cleaned."

Plaintiffs vacated their apartment September 10, 1979, the expiration date of the lease. Within 30

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

days they received a check from Green Terrace Associates for the amount of their security deposit less $37.50. They also received a damage list showing that the amount retained was charged against the security deposit to reimburse Green Terrace Associates for the expense of cleaning the apartment. Until they brought this lawsuit, the plaintiffs did not object to the retention of their deposit for this purpose.

On January 22, 1980, plaintiffs instituted this class action, alleging that the deduction of funds from their security deposit to offset the cost of cleaning their apartment violated the landlord-tenant relationship act (LTRA), MCL 554.601 *et seq.;* MSA 26.1138(1) *et seq.,* and the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.;* MSA 19.418(1) *et seq.*

Defendants moved for summary judgment on March 17, 1980, arguing that plaintiffs' claim was barred by their failure to object to the cleaning charge in a timely fashion. On April 10, 1980, plaintiffs filed a request for admissions, seeking admissions that defendants, in the regular course of their business, made claims for cleaning expenses against the security deposits of at least 30 other tenants. Plaintiffs also moved for class certification and partial summary judgment. Subsequently, defendants tendered a certified check for $37.50, the amount deducted from the security deposit. Plaintiffs refused the tender. Defendants then filed another motion for summary judgment, contending that their tender rendered plaintiffs' claims moot and that their case was not suitable for class treatment.

Defendants' motion for summary judgment and plaintiffs' motion for partial summary judgment were argued on June 11, 1980. Plaintiffs had with-

drawn their motion for class certification, having been unable to obtain discovery by the time of the hearing. At the close of the hearing, the trial court took the motions under advisement.

On August 19, 1980, the trial court rendered an opinion and order granting the defendants' motion for summary judgment. Subsequently, plaintiffs brought this appeal, raising five issues in this Court.

Plaintiffs contend that a deduction of cleaning expenses from a security deposit violates the LTRA and MCPA. Although the trial court did not rule on this question, a proper resolution of the present dispute requires us to address this issue.

We first consider whether the LTRA permits a landlord to deduct cleaning expenses from a tenants security deposit. With the LTRA, the Legislature sought to regulate the collection, use and repayment of security deposits. In particular, the act severely limits the purposes for which a landlord may retain a security deposit. The act provides:

"A security deposit may be used only for the following purposes:

"(a) Reimburse the landlord for actual damages to the rental unit or any ancillary facility that are the direct result of conduct not reasonably expected in the normal course of habitation of a dwelling.

"(b) Pay the landlord for all rent in arrearage under the rental agreement, rent due for premature termination of the rental agreement by the tenant and for utility bills not paid by the tenant." MCL 554.607; MSA 26.1138(7).

Consequently, a landlord may not use a tenant's security deposit for any purposes other than those listed in the statute.

The question in the present case is whether a rental unit requiring only cleaning after the termination of occupancy has suffered "damages" under the above provision. If not, then a landlord is prohibited from retaining a portion of a tenant's security deposit to pay the cost of cleaning the rental unit.

In construing a statutory provision, our primary objective is to divine the Legislature's intent. *Citizens for Pre-Trial Justice v Goldfarb,* 88 Mich App 519, 550; 278 NW2d 653 (1979). Where a term is not defined by the statute, it is to be given its plain and ordinary meaning "for it is to be presumed that the legislature, not having indicated otherwise, so intended". *Bingham v American Screw Products Co,* 398 Mich 546, 563; 248 NW2d 537 (1976), quoting 22 Callaghan's Michigan Civil Jurisprudence, § 121, p 479. The meaning of the term "damages" is not difficult to articulate. The ordinary meaning of "damage" is that of injury to something, in this case, property. Webster's defines "damage" as "loss or harm resulting from injury to person, property, or reputation". *Webster's New Collegiate Dictionary* (7th ed, 1972), p 209. Given this meaning of the word, a rental unit requiring cleaning has not been damaged. While a grimy kitchen wall, a soiled carpet and a stained couch are all unattractive, the wall, carpet and couch themselves have not been injured. Thus, the Legislature could not have intended that a rental unit needing cleaning has suffered "damages" under the statute.

We may also determine the Legislature's intent by considering the use of the term "damages" elsewhere in the LTRA. See *Braden v Spencer,* 100 Mich App 523, 530; 299 NW2d 65 (1980). The statute provides that the landlord must submit to

the tenant "an itemized list of damages * * * including the estimated cost of *repair* of each property *damaged* item * * *"". MCL 554.609; MSA 26.1138(9). (Emphasis added.) Thus, the statute contemplates that damage is the sort of condition remedied by repair.

To plaster a wall with a hole in it is to repair the wall. No one would doubt that the wall had been damaged. But to wash a wall with dirt on it is not to "repair" it. An item which is cleaned has not been repaired. Nor has that item been "damaged". Thus, the Legislature must have intended that premises requiring cleaning have not, as such, suffered damages.

This conclusion is further supported by consideration of the purpose of the LTRA. As this Court said in *Stutelberg v Practical Management Co,* 70 Mich App 325, 338; 245 NW2d 737 (1976), *lv den* 398 Mich 804 (1976):

"The Act is primarily aimed to protect the tenant from the landlord surreptitiously usurping substantial sums held to secure the performance of conditions under the lease.

*     *     *

"The misleading practice of landlords obtaining large security deposits while charging a lesser monthly rate than their competitors and then unilaterally withholding a good portion of this deposit for unsuspected reasons is halted by the Act."

One such "misleading practice" was to retain security deposit funds for cleaning expenses under the guise of a reimbursement for "damages". The problem has been stated as follows:

"There are those who write a lease that a deposit will be returned except for *damage* to the premises, wear

and tear excepted. Yet we find that a dirty carpet, window, wall or cupboard is suddenly an extraordinary risk of damage and deductions from the deposit are made. The cleaning charges are usually sky high and on some occasions are either not actually borne by the landlord or are paid to subsidiary cleaning companies. These "damage" deposits are also translated into costs of re-rental which are deducted from the deposit amount. On many occasions costs deducted are arbitrarily excessive, such as dust closet doors—$10.00; lost key —$10.00; replacement of burnt-out light bulb—$1.00 each." Memorandum of the Attorney General, Regarding: Analysis of House Bill 5978 (May 3, 1972).

We believe that the Legislature had this problem in mind when it drafted MCL 554.607; MSA 26.1138(7). The Legislature specified that the security deposit could only be used to pay for "actual" damages to the premises. The term "actual" was added, we believe, to alert landlords that they could no longer stretch the meaning of the term "damages" to include such fabricated "damages" as grimy appliances and dirty floors.

For the above reasons, we find that a rental unit needing only cleaning has not suffered "damages" as used in MCL 554.607; MSA 26.1138(7). We hold, therefore, that that provision forbids a landlord from deducting cleaning expenses from a tenant's security deposit.

We next consider whether deducting cleaning expenses from a tenant's security deposit violates the MCPA. The act prohibits certain unconscionable, deceptive or unfair acts, practices or methods in the conduct of trade or commerce. The act defines "trade or commerce" to include the rental of real property. MCL 445.902; MSA 19.418(2). Among other proscribed activities, the MCPA lists "[f]ailing, in a consumer transaction which is * * * terminated in accordance with the terms of an

agreement * * * to promptly restore to the person or persons entitled thereto any deposit * * *". MCL 445.903(1)(u); MSA 19.418(3)(1)(u). We have just held that a landlord may not claim cleaning expenses against a tenant's security deposit. The tenant is entitled to that portion of his security deposit kept by the landlord to defer the expense of cleaning the premises. Thus, we hold that a landlord who retains part of a tenant's security deposit for cleaning violates the MCPA.

Second, plaintiffs argue that the trial court erred in ruling that the plaintiffs, by failing to respond in a timely fashion to the defendants' notice of damages, forfeited their claims that the defendants improperly retained part of their security deposit to defer cleaning expenses. We agree.

Under the LTRA, a landlord who has claims against a security deposit must submit an itemized list of damages to the tenant within 30 days from the termination of occupancy, MCL 554.609; MSA 26.1138(9), provided the tenant has notified the landlord properly of his new address, MCL 554.611; MSA 26.1138(11). The tenant must respond to this notice of damages within seven days after receipt of the list or "forfeit the amount claimed for damages". MCL 554.609; MSA 26.1138(9). Defendants argue that under the forfeiture provision a tenant who fails to respond in a timely manner forfeits the amount the landlord claims for damages whether or not the claim is allowed under MCL 554.607; MSA 26.1138(7). We reject this interpretation of the statute. First, the statute provides that the landlord's damage list may include only damages "for which the security deposit may be used" under MCL 554.607; MSA 26.1138(7). Under defendants' interpretation, a tenant would forfeit the amount of a claim for

damages appearing on the list even though the statute forbids the landlord from placing that claim on the list in the first place. A statute should be construed so as to avoid—not produce—absurd consequences. *King v Director, Midland County Dep't of Social Services,* 73 Mich App 253; 251 NW2d 270 (1977). Second, by adopting the defendants' view of the forfeiture provision we would frustrate the purpose of the LTRA. As noted above, the act is intended, in part, to prevent landlords from retaining surreptitiously a portion of the security deposit for cleaning. Defendants' interpretation of the forfeiture provision, however, would give landlords an incentive to slip claims for cleaning into the list of damages in the hope that the tenant would not spot the illegality within the seven-day period. If the tenant fails to respond promptly, the landlord would thereby reap the bounty of his mischief. We must construe a statute so as to implement, rather than frustrate, the legislative purpose. *Frost-Pack Distributing Co v Grand Rapids,* 399 Mich 664; 252 NW2d 747 (1977). Accordingly, we hold that a tenant who fails to respond within seven days from receipt of the landlord's list of damages does not forfeit an amount claimed for cleaning the rental unit. Thus, the trial court erred in holding otherwise.

Third, plaintiffs maintain that the trial court erred in declaring that defendants' tender of $37.50—the portion of plaintiffs' security deposit withheld for cleaning expenses—rendered their case moot. As a general rule, a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome". *United States Parole Comm v Geraghty,* 445 US 388, 396; 100 S Ct 1202, 1208; 63 L Ed 2d 479, 490 (1980), quoting *Powell v McCormack,* 395

US 486, 496; 89 S Ct 1944, 1951; 23 L Ed 2d 491, 502 (1969). A court does not lose jurisdiction over a case that has become moot. Instead, mootness reflects "a policy of judicial self-restraint which prevents the litigation of issues whose outcome has ceased to be of any importance". *Woodson v Dep't of Social Services,* 27 Mich App 239, 246, fn 9; 183 NW2d 465 (1970).

In general, a case is rendered moot when the plaintiff has been made whole. *Arizona Electric Power Co-operative, Inc v Federal Energy Regulatory Comm,* 203 US App DC 220; 631 F2d 802 (1980). The plaintiffs in the present case, however, do not come under this general rule. They have not been made whole because they did not accept the defendants' offer to pay them $37.50. But even if they had accepted the payment, the case would remain viable. First, the plaintiffs requested more in monetary compensation than the amount tendered. In their complaint, plaintiffs ask for "twice the amount of security deposit funds illegally retained by defendants" as relief from the LTRA violation. They also request that the court award $250 to each plaintiff for the MCPA violation pursuant to MCL 445.911; MSA 19.418(11). In addition, the plaintiffs request damages. It is clear that a payment of $37.50 does not satisfy the plaintiffs' demands. Second, the plaintiffs ask for injunctive relief as well as monetary compensation. The defendants did not offer to cease retaining a portion of their tenants' security deposits to defer cleaning expenses. It is well-selled that "when other remedies sought are not moot, the underlying issue may be decided". *Danzy v Johnson,* 417 F Supp 426, 432 (ED Penn, 1976), *aff'd* 582 F2d 1273 (CA 3, 1978).

For the above reasons, we hold that the defen-

dants' tender of $37.50 to the plaintiffs did not render their case moot.

Fourth, plaintiffs argue the the trial court erred in ruling that they were not adequate representatives of the class. A named plaintiff is an adequate class representative only if he will pursue the rights of the class vigorously through qualified counsel. *Grigg v Michigan National Bank,* 405 Mich 148, 175; 274 NW2d 752 (1979). The trial court found that the plaintiffs would not pursue the rights of the class vigorously because they had forfeited their claims under the LTRA and defendants' tender of $37.50 had rendered their case moot. But we have rejected the forfeiture and mootness arguments. Thus, the trial court erred in ruling that the plaintiffs were inadequate class representatives. We express no opinion, however, as to whether the plaintiffs are adequate representatives of their class. As the discussion immediately below indicates, resolution of this issue must await further discovery.

Finally, plaintiffs contend that the trial court erred in concluding, prior to allowing discovery, that the present action was inappropriate for class treatment. We agree. Although Michigan's appellate courts have not addressed this issue directly, the federal courts have commented upon it. In *Chateau de Ville Productions v Tams-Witmark Music Library, Inc,* 586 F2d 962, 966 (CA 2, 1978) the court said:

"The court should defer dicision *[sic]* on certification pending discovery if the existing record is inadequate for resolving the relevant issues. * * * Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate

presentation either in its memoranda of law or at the hearing on the motion if one is held."

In *Pittman v E I du Pont de Nemours & Co, Inc,* 552 F2d 149, 150 (CA 5, 1977), the court wrote:

"Of course, a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action. The plaintiff is entitled to some leeway in attempting to define the proper parameters of his proposed class."

The present case illustrates the wisdom of a policy disfavoring a ruling on the class action question prior to allowing discovery. To bring a class action, the members of the class must be so numerous that joinder of all members is impracticable. GCR 1963, 208.1. The trial court ruled that "there is little here to convince the court that the class is so numerous that joinder of parties is not a feasible option". The court made this ruling, however, before allowing discovery, the most effective procedure for ascertaining the number of members in the class. Thus, it is no surprise that the court had "little * * * to convince" it that the class satisfied the numerosity requirement.

Before a trial court rules on the class action question it must give the representative plaintiff a fair opportunity to develop the facts necessary to show that his case is suitable for class action treatment. Plaintiffs were not afforded such an opportunity and, consequently, the trial court's ruling on the class action issue was premature.

The trial court's order granting the defendants' motion for summary judgment is reversed and the case is remanded for proceedings consistent with this opinion.

Reversed and remanded. No costs, a significant question of statutory construction being involved.