ELIZABETH CARTER, Plaintiff-Appellant, *v.* J. ARNOLD MUELLER, a/k/a George Mueller, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 82—2624

Opinion filed December 16, 1983.

Jeffrey L. Taren, of Kinoy, Taren, Geraghty & Potter, of Chicago, for appellant.

Selwyn Zun, Robert W. Gettleman, and David B. Bayless, all of Chicago (D'Ancona & Pflaum, of counsel), for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiff Elizabeth Carter brought suit against defendants for allegedly inducing her to lease an uninhabitable apartment on the basis of various false representations. The four count amended complaint alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 et seq.) (count I), common law fraud (count II), breach of implied warranties of habitability and quiet enjoyment (count III), and wilful and wanton misconduct (count IV). Defendants filed a counterclaim seeking damages for unpaid rent and for property damage. After a bench trial, the trial court entered judgment on count III in favor of plaintiff and against defendants in the amount of $500. The court granted judgment in favor of defendants on counts I, II and IV and in favor of the plaintiff on the counterclaim. Plaintiff appeals from that portion of the judgment entered in favor of defendants on counts I, II and IV. Defendants have not appealed from the judgment in favor of plaintiff on the counterclaim.

At trial, plaintiff testified that on March 2, 1981, she discussed renting an apartment with the rental agent, Marianne Naples, at Cambridge Square Apartments. Plaintiff asked whether any two-bedroom units were available. Naples indicated that there were and gave her the key to a two-bedroom model apartment. The model was clean and painted and contained a modern stove and refrigerator. Plaintiff told Naples that she wanted an apartment with a southern exposure. Naples pointed on a map to an apartment facing south and indicated that such an apartment was available. Plaintiff asked to see the apartment but was told that she could not because Naples did not have the key. Plaintiff returned the next day and again was told that she could not see the apartment for the same reason. Plaintiff asked Naples whether the apartment would be thoroughly cleaned and painted and was told that it would be "in perfect condition, just like the model"

apartment. Plaintiff gave Naples a check for $100 to hold the apartment and as a partial payment of the security deposit. On March 10, 1981, plaintiff signed a lease and delivered a check for $560 to Naples for the first month's rent and the balance of the security deposit. At this time plaintiff again asked whether "everything was going to be taken care of in the apartment" and was assured by Naples that it would be. On March 27, 1981, plaintiff talked with defendant Mueller at the apartment building. He told her that everything had been done except the carpet cleaning. He gave her the keys to an apartment which she discovered faced north rather than south. She told Mueller that a mistake had been made and he replied that he had no other apartments available. Plaintiff did not have an opportunity to inspect the apartment until the next day when she moved in.

When she moved in, she discovered that outside the apartment proper, the doorbells, mailbox and security door were all broken. The apartment itself was filthy. The carpet was dirty and smelled terrible and was ripped by the door. Litter was strewn about the apartment and the windows were unwashed. In one bedroom a window was broken. The walls had not been cleaned but instead had been painted over in the spots where they were dirty. There was a big hole in one bedroom door. The oven and refrigerator were not operational. The refrigerator was "filthy with decayed food in it [and] [m]old all over it." The bathroom had never been cleaned and the toilet would not stop running. There was extremely low water pressure with no hot water. The apartment was infested with cockroaches and silverfish.

Despite these defects, plaintiff moved into the apartment because she had no other place to go. She stayed for three days, during which she was able to obtain a working refrigerator from another apartment. She told defendant Mueller that she wanted her money back because the apartment was neither the one she was promised nor in the condition she was promised. No repairs were made during her stay in the apartment and on March 31, 1981, she moved out.

In an offer of proof, plaintiff stated that it cost her $50 to move out of the apartment. The trial court also sustained objections to questions concerning whether plaintiff would have moved into the apartment had she seen its condition, and how she felt when she saw the apartment's condition.

On cross-examination plaintiff testified that although she had walked through the rooms of the apartment prior to moving in, she had not examined the apartment.

Marianne Naples, the rental agent, testified on behalf of plaintiff. She stated that she was employed by defendant George F. Mueller &

Sons, Inc., at Cambridge Square Apartments from November of 1980 until July of 1981 as a rental agent. Arnold Mueller instructed her to do certain things when renting apartments to prospective tenants. She was told to show them the model apartment and to say that she did not have the key to the apartment that she was actually leasing. Mueller told her that she could not rent to blacks. The trial court sustained defense objections to questions concerning defendants' policies for handling complaints from other apartments and pertaining to defendants' patterns and practices of business. Naples confirmed plaintiff's testimony concerning the conversations leading to plaintiff's signing of the lease. She admitted that she had at all times a pass key to the apartment leased to plaintiff. When asked whether she knew whether the apartment would be painted and cleaned to look like the model, the trial court sustained defendants' objection on the ground that "[s]he can't possibly tell us what's going to happen tomorrow morning ***." Naples was allowed to testify that she knew from personal observation that the apartment's actual condition did not conform to that of the model.

On cross-examination Naples testified that she had delivered to defendant Mueller the checks which she had received from plaintiff for the apartment.

Michael Murphy testified on plaintiff's behalf. He stated that he is married to plaintiff's mother. He assisted plaintiff in moving into Cambridge Square Apartments on March 28, 1981. He corroborated the testimony of plaintiff and Naples concerning the dilapidated condition of the apartment.

Plaintiff thereupon rested her case. Defendants also rested without presenting any testimony. The trial court then found that plaintiff should recover $500 for count III. The court further stated as to the tort counts that "[t]here was no tort obligation" and that "an obligation of a tenant [is] to see that the apartment is spic and span before she moves in." The court found against plaintiff on counts I, II and IV, and against defendants on the counterclaim. Plaintiff appeals from that portion of the trial court's judgment which denied her any relief under counts I, II and IV.

OPINION

The first issue which plaintiff presents for review is whether the trial court's ruling that plaintiff had failed to prove fraud and deceit is contrary to the manifest weight of the evidence. The supreme court has held that:

> "the elements of a cause of action for fraudulent misrepresen-

tation (sometimes referred to as 'fraud and deceit' or 'deceit') are: (1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. [Citations.] Furthermore, the reliance by the other party must be justified, *i.e.*, he must have had a right to rely." (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599.)

Each of these elements will be discussed in turn.

Plaintiff's testimony, as well as that of Naples, was unrebutted and largely unimpeached. Both testified that plaintiff was told that the apartment which she would lease would be in the same condition as the model apartment. The evidence adequately established that this statement was false and material to plaintiff's decision. Thus, the first element of the cause of action was satisfied. The second element is satisfied by Naples' testimony that she knew that the apartment did not conform to the model. The third element, intent, may be satisfied by proof that defendants knowingly made a false statement to another who relies thereon and a plaintiff need not prove an express fraudulent intent. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 491, 429 N.E.2d 1267.) Thus, Mueller's action in instructing Naples to state falsely that she did not have a key and Naples' false statements concerning the condition of the apartment satisfy this element. The plaintiff's actions in paying the two checks, signing the lease, and moving into the apartment satisfy the fourth and fifth requirements. We conclude that plaintiff established at least a *prima facie* cause of fraud and deceit.

The trial court, however, ruled that plaintiff could not recover for fraud because "an obligation of a tenant [is] to see that the apartment is spic and span before she moves in." This observation pertains to whether plaintiff was justified in relying on the misrepresentations. While the general rule is that a plaintiff " 'is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts ***' " (*Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, 1134, 404 N.E.2d 1026, quoting *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 94, 169 N.E.2d 229), where the person making the statement has inhibited plaintiff's inquiries by either creating a false sense of security or blocking investigation, the failure to inquire is not fatal (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 51-52, 390 N.E.2d 393; see also *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 492, 429

N.E.2d 1267). Both of these actions are present in the instant case as Naples precluded investigation by lying about the key and defendant Mueller falsely stated that "everything had been done." Moreover, as the court in *Mother Earth, Ltd.* noted:

> "even if plaintiffs were guilty of negligence in failing to insist on verification of [the false statement], the cause of action here presented is for an intentional tort, and it is well settled that an action for an intentional tort cannot be defeated by an assertion of negligence on the part of the plaintiff." (72 Ill. App. 3d 37, 52, 390 N.E.2d 393.)

In the instant case, the action is also for fraudulent misrepresentation rather than negligent misrepresentation. Accordingly, plaintiff's failure to inspect the apartment prior to signing the lease is insufficient to avoid the effect of defendants' misconduct.

▇ Nor is the defendants' misconduct ameliorated by the characterization of the false statements as promises of future action. While "the general rule denies recovery for fraud based on a false representation of intention or future conduct, *** there is a recognized exception where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 334, 371 N.E.2d 634.) Such is the case here. Additionally, defendant Mueller, prior to plaintiff's moving into the apartment, assured her that everything had been taken care of except the carpet cleaning. This is a statement of present fact sufficient to form a basis for fraud.

▇ Defendants argue that any discrepancy between what plaintiff was promised and what she received was due entirely to mutual mistake, but the record does not provide support for this argument. "Indeed, it has been held that good faith is no defense where the fraud and deceit practiced consist, as here, of making false statements of fact as to the knowledge of the speaker." *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 491, 429 N.E.2d 1267.

Finally, defendants have also contended that the trial court's ruling represented a determination that plaintiff's witnesses were not credible. The record provides no support for this assertion. The trial judge specifically stated that he did not believe that plaintiff had satisfied her duty to inspect the premises prior to signing the lease; this was the basis for the trial court's ruling.

▇ ▇ Accordingly, we conclude that the trial court's ruling was against the manifest weight of the evidence and a new trial is therefore justified. Because of this result, we will not discuss in detail plaintiff's assertions of error in the trial court's refusal to admit cer-

tain evidence. We do note, however, that evidence of similar transactions and practices is admissible to establish defendants' *modus operandi* and intent, and is also relevant to a determination of punitive damages. (*Vance Pearson, Inc. v. Alexander* (1980), 86 Ill. App. 3d 1105, 1109-10, 1113, 408 N.E.2d 782; see also *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 333, 371 N.E.2d 634.) Defendants' assertion that plaintiff's failure to make an offer of proof in this connection has waived this issue on review is without merit. "Ordinarily an offer of proof is required so that the trial judge, opposing counsel, and the reviewing court would know what evidence was sought to be produced, but it is not necessary when the nature of that evidence is apparent." (*Allen & Korkowski & Associates v. Pettit* (1982), 108 Ill. App. 3d 384, 388, 439 N.E.2d 102.) In the instant case, the evidence sought to be produced was before the court and subsequently struck on defendants' motion. Thus, no offer of proof is necessary.

■ The next issue for review is whether plaintiff proved a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act (the Act) (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*). Section 2 of the Act provides that:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', * * * in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. * * *." (Ill. Rev. Stat. 1981, ch. 121½, par. 262.)

The first step in our analysis is to determine whether the statute applies to the instant case.

The Act prohibits deception and unfair practices in the "conduct of *any* trade or commerce." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 121½, par. 262.) Section 1(f) defines "trade and commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." (Ill. Rev. Stat. 1981, ch. 121½, par. 261(f).) The supreme court has indicated that "[t]his broad language evidences an intent that the Act have correspondingly broad applicability."

(*Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 284, 430 N.E.2d 1012.) "It has been stated that there is a clear mandate from the legislature to the courts to use the Consumer Fraud Act to the utmost degree to eradicate all forms of deception and unfair business practices." (*Buzzard v. Bolger* (1983), 117 Ill. App. 3d 887, 893, 453 N.E.2d 1129.) We will analyze the statute with these precepts in mind.

It has been held that "[u]nder a liberal construction of the broad language of section 1(f), the defendant's leasing of lots and providing utilities to his tenants are a 'distribution of services' and, therefore, a 'trade or commerce' as defined by the Act." (*People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 87-88, 438 N.E.2d 924; see also *People ex rel. Fahner v. Testa* (1983), 112 Ill. App. 3d 834, 838, 445 N.E.2d 1249.) Thus, there is precedent for applying the statute to the landlord-tenant relationship. Defendant contends that these cases are distinguishable because services were furnished in conjunction with the leases. An examination of the lease in the instant case discloses covenants similar to those in the above cases. These include the provision of heating and ventilation, maintenance of the apartment and grounds, and a water supply. Moreover, the statutory definition also embraces the "distribution" of "any property *** real, personal or mixed ***." (Ill. Rev. Stat. 1981, ch. 121½, par. 261(f).) In our opinion, this language is sufficiently broad to include the instant landlord-tenant relationship. As the Pennsylvania Supreme Court declared in construing a very similar statute, "[t]o refuse to apply the Consumer Protection Law to the leasing of residential housing would needlessly insulate a great percentage of market transactions from the Law's salutary antifraud provisions. Only by exalting form over substance could such a course be pursued." (*Commonwealth v. Monumental Properties, Inc.* (1974), 459 Pa. 450, 478, 329 A.2d 812, 826.) Accordingly, we conclude that the Act applies to the instant case.

■ We must next consider whether plaintiff has standing to sue under the Act, that is, whether she qualifies as a "consumer." (See *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 88, 438 N.E.2d 924.) Although the statute provides a right of action to "[a]ny person who suffers damage as a result of a violation of Sections 2 through 20 of this Act ***" (Ill. Rev. Stat. 1981, ch. 121½, par. 270a), the supreme court has held that only "consumers" have standing to sue under the Act (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 328, 371 N.E.2d 634). A "consumer" is defined in section 1(e) of the Act as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his

trade or business but for his use or that of a member of his household ***." (Ill. Rev. Stat. 1981, ch. 121½, par. 261(e).) Section 1(b) of the Act defines merchandise as including "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services ***." (Ill. Rev. Stat. 1981, ch. 121½, par. 261(b).) As indicated above, the lease which defendants induced plaintiff to sign provided that defendants would perform certain services in conjunction with the tenancy. These included maintenance of the apartment and grounds, heating and plumbing facilities. Under *Hedrich*, this is sufficient for plaintiff to maintain an action under the Act. *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 88, 438 N.E.2d 924.

Our determination that plaintiff established a *prima facie* case of fraud is sufficient to warrant the conclusion that the same acts violate the Act because the Act prohibits any misrepresentation. The statute has also been construed to provide an even greater protection than the common law action of fraud. (*Buzzard v. Bolger* (1983), 117 Ill. App. 3d 887, 893, 453 N.E.2d 1129.) We therefore conclude that plaintiff established a violation of the Act and the trial court's decision was accordingly against the manifest weight of the evidence.

■ We turn now to the issue of punitive damages. As our discussion of the prior issues has indicated, the trial court's decision in this case was predicated on a finding that the plaintiff's failure to inspect the apartment precluded the imposition of tort liability. Our task now is to determine whether a remandment of the punitive damages count is justified in this case.

> "It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others [citation]. Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future." (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353.)

In the instant case the tort which assertedly is the predicate for the punitive damages count is the defendants' fraudulent misrepresentation. This tort can support an award of exemplary or punitive damages. (*Vance Pearson, Inc. v. Alexander* (1980), 86 Ill. App. 3d 1105, 1112-13, 408 N.E.2d 782.) The question now becomes whether plaintiff's trial presentation developed facts sufficient to conclude that punitive damages might be assessed in this case.

324

Plaintiff adduced testimony, subsequently stricken, the thrust of which was that defendants' policy and practice was to lease apartments which did not conform to the model apartment in substantial aspects. Such a pattern of deception will justify an award of punitive damages. (*Vance Pearson, Inc. v. Alexander* (1980), 86 Ill. App. 3d 1105, 1113, 408 N.E.2d 782.) This comports with the policy considerations discussed in *Kelsay*: because plaintiff's actual damages are relatively low, the deterrent effect of punitive damages may be necessary to discourage the repeated fraud apparently practiced by defendants. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186-87, 384 N.E.2d 353.) Accordingly, we conclude that a remand of this count is proper. We caution, however, that the foregoing discussion should not be construed as a determination that punitive damages should necessarily be imposed in this case. We leave that determination to the trial court.

For the foregoing reasons, that portion of the judgment entered in favor of defendants as to counts I, II and IV is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded with directions.

SULLIVAN and O'CONNOR, JJ., concur.