**Marsha LOVE, Respondent,**

v.

**Boyd AMSLER, Sr., Appellant.**

**No. C4–88–2240.**

Court of Appeals of Minnesota.

June 13, 1989.

Review Denied Aug. 15, 1989.

David L. Ramp, John S. Whitelaw, Legal Aid Society of Minneapolis, Minneapolis, for respondent.

Ronald R. Notermann, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., David R. Woodward, Sp. Asst. Atty. Gen., for amicus curiae.

Heard, considered and decided by SCHUMACHER, P.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

The owner of leased housing appeals a trial court judgment permitting a tenant's recovery of rent payments for breach of the covenants of habitability and applying Minnesota's Prevention of Consumer Fraud Act to deceptive landlord practices.

### FACTS

The facts, as found by the trial court, are not disputed on appeal. In September 1986 Marsha Love and her three minor children rented a house from Boyd Amsler, Sr., agreeing to pay $385 per month and to be responsible for all utilities. Amsler required that water service for the property remain in his name and requested payment from Love for water bills he claimed to have received.

Amsler did not show Love the bills nor provide Love with receipts for those payments. Despite periodic payments, Amsler

claimed in the unlawful detainer action that Love owed an additional $275.97 in water bills for her seven-month tenancy. In the counterclaim in the present action, Amsler claims that the unpaid water bill for the same period is $460.98. The only record submitted by Amsler is a water bill of $68.88 for September 1986 to March 1987.

In June 1987 Love withheld $113 from her rent payment and Amsler, proceeding *pro se*, filed an unlawful detainer action seeking approximately $400 for rent, water bills, and attorney's fees. The parties settled and Love vacated the house. Four days before Love vacated, Amsler filed an action in conciliation court claiming $1,341 for unpaid rent and damages, including the cost of cleaning. Amsler's conciliation court action was joined as a counterclaim when Love filed this action against Amsler in district court.

It was established at trial, primarily through the testimony of housing inspector Roger R. Hankey, that throughout Love's tenancy the home was in extremely poor condition. The home's only heat source, a gas space heater in the living room, had a missing glass panel and was "red-tagged" by a Minnegasco employee as unsafe to operate. Amsler would not replace the panel, and told Love to operate the space heater without it. When Love and her family vacated the house in June 1987 the walls were covered with soot. Amsler included the cost of repainting these walls in the damages he sought to recover from Love.

The gas water heater in the basement was vented into a cavity in the chimney, between the chimney brick and the vent pipe. This cavity was completely blocked by fiberglass insulation which prevented the water heater fumes from escaping outdoors and caused them to back up into the living room through the space heater duct work. Hankey testified that these fumes contained potentially lethal toxins including carbon monoxide. Love and her children suffered severe headaches while living in the house.

The house also had dangerous electrical and structural defects and serious flooding problems. Inspector Hankey observed trip hazards, poor drainage, inadequate foundation, defective insulation and weatherstripping, loose and rotting walls, and defective paint and roofing.

Amsler owns, according to his testimony, approximately 12 rental units. At trial Love presented evidence that showed in the last three years Amsler has pursued claims exceeding $27,000 against tenants in 32 cases in Hennepin County district, probate, conciliation, and unlawful detainer courts. The suits typically involve claims for (1) unpaid water bills, (2) cleaning and damage costs, and (3) attorney fees.

In requiring tenants to pay for water service, Amsler does not allow them to put the service in their own names and does not maintain accurate records of water usage or costs. In seeking property damage and cleaning costs, Amsler files claims in conciliation court before assessing the condition of the dwelling and before the end of the tenancy. Amsler routinely claims attorney's fees in the numerous actions he initiates, although he files and pursues the actions *pro se*.

After a two-day hearing, the trial court ordered a rent abatement and found that Amsler's conduct in requiring tenants to pay unincurred water bills, unsupported cleaning and damage costs, and non-existent attorney's fees was an unfair and deceptive trade practice in violation of Minn.Stat. § 325F.69 (1988). Amsler appeals.

## ISSUES

1. Does The Prevention of Consumer Fraud Act, Minn.Stat. § 325F.68–325F.70, apply to deceptive landlord practices in residential leases?

2. Is a tenant entitled to recover past rental payments as damages for a landlord's breach of the covenants of habitability?

3. Did the trial court err in its award of fees and costs or by imposing conditions on Amsler's right to file suit in Hennepin County?

## ANALYSIS

### I. The Prevention of Consumer Fraud Act.

■ The Prevention of Consumer Fraud Act (the Act), Minn.Stat. § 325F.68–325F.70, is one of 25 sections included in Chapter 325F, Consumer Protection; Products and Sales. It is part of a series of specifically enumerated statutes relating to "unfair, discriminatory, and other practices in business, commerce or trade" that the attorney general is authorized to enforce. Minn.Stat. § 8.31, subd. 1 (1988). The same section authorizes a private right of action for violation of the Act, including recovery of damages, costs, attorney's fees, and other equitable relief. Minn.Stat. § 8.31, subd. 3a.

The trial court expressly held that the Act applies to residential leases and deceptive landlord practices; fashioning its relief under the Act. Although other states have interpreted their consumer protection acts to include leased housing,[1] Minnesota appellate courts have not previously addressed the issue.

The Act contains three sections: definitions, unlawful practices and remedies. Under unlawful practices, the Act enjoins

[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby.

Minn.Stat. § 325F.69, subd. 1 (1988). The three words which determine whether Amsler's practices are governed by the Act are "person," "sale" and "merchandise." There is no dispute that Amsler is within the statutory definition of person, nor that residential real estate is within the definition of merchandise which specifically includes "real estate or services." Minn. Stat. § 325F.68, subds. 2 & 3 (1988).

The pivotal question is whether the lease of real estate is included within the meaning of the word "sale." "Sale" is defined by the Act as "any sale, offer for sale or attempt to sell * * * for any consideration." This definition does not explicitly include or exclude leases from coverage, and as a result, we look to case law and legislative intent to decide the issue. *See* Minn.Stat. § 645.16 (1988).

First, Minnesota courts have long recognized the dual nature of a lease transaction as sharing characteristics of both a sale or transfer of an interest in land, and a contract. *Craig v. Summers*, 47 Minn. 189, 192, 49 N.W. 742, 743 (1891) (a lease is a conveyance); *State v. Bowman*, 202 Minn. 44, 46, 279 N.W. 214, 215 (1938) ("A lease is a conveyance of lands or tenements, for a term less than the party conveying has in the premises, in consideration of rent or other recompense"); *Gruman v. Investors Diversified Services, Inc.*, 247 Minn. 502, 506, 78 N.W.2d 377, 380 (1956) (a lease is a conveyance in real property).

Other states have also interpreted "sale" to include residential leases, applying market concepts by viewing the tenant as "a consumer of housing services." *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 467, 329 A.2d 812, 820 (1974). The tenant "seeks to purchase 'housing' from his landlord for a specified period of time [and] [t]he landlord 'sells' housing

---

1. *See, e.g., Hernandez v. Stabach,* 145 Cal.App.3d 309, 193 Cal.Rptr. 350 (1983) (landlord's institution of retaliatory unlawful detainer actions enjoinable as an unlawful business practice); *Conaway v. Prestia,* 191 Conn. 484, 464 A.2d 847 (1983) (collection of rent without obtaining required certificates of occupancy violates state Unfair Trade Practices Act); *Carter v. Mueller,* 120 Ill.App.3d 314, 75 Ill.Dec. 776, 457 N.E.2d 1335 (1983) (residential landlord's misrepresentations violate state consumer fraud statute); *Smolen v. Dahlmann Apts., Ltd.,* 127 Mich.App. 108, 338 N.W.2d 892 (1983) (improper retention of security deposits violates state consumer protection statute); *49 Prospect Street v. Sheva Gardens,* 227 N.J.Super. 449, 547 A.2d 1134 (1988) (state consumer fraud act applies to rental of residential real estate); *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974) (leasing of residential property falls within the ambit of state consumer protection law); *State v. Weller,* 109 Wis.2d 665, 327 N.W. 2d 172 (1982) (penalty and injunction for unfair trade practices upheld against landlord who rented housing maintained in violation of housing code).

\* \* \*." *Id.* 329 A.2d at 821 (quoting *Green v. Superior Court*, 10 Cal.3d 616, 627, 111 Cal.Rptr. 704, 711, 517 P.2d 1168, 1175 (1974)). Viewing a lease as possessing the characteristics of a sale is based on the common law.[2]

Second, when ascertaining legislative intent, we are guided by statutory presumptions and interpretive factors. Minn.Stat. § 645.16–645.17 (1988). Specifically, we must assume that "[t]he legislature does not intend a result that is \* \* \* unreasonable," and may take into account the necessity for the law, the mischief to be remedied, the object to be attained, the consequences of the interpretation, including that of a contrary interpretation, and the administrative interpretation of the statute. *Id.*

State anti-fraud measures are "[p]redicated on a legislative recognition of the unequal bargaining power of opposing forces in the marketplace" and are designed to "[p]lace on more equal terms seller (landlord) and consumer (tenant)" and "[t]o ensure the fairness of market transactions." *Monumental Properties*, 459 Pa. at 457–58, 329 A.2d 812.

The lack of affordable residential housing and the inequality of the bargaining power between residential landlords and tenants, particularly low and moderate income tenants, weigh in favor of including residential leases under the Act. Because the Act is remedial it should be "[c]onstrued liberally for advancement of the remedy." *Governmental Research Bureau, Inc. v. Borgen*, 224 Minn. 313, 323, 28 N.W.2d 760, 766 (1947).

An interpretation of the Act to include residential leases would provide a mechanism to halt the use of deceptive landlord practices which take advantage of an already unequal bargaining position. That the legislature intended to protect only purchases of residential real estate and not leases of the same properties—especially in light of the unequal bargaining positions of those who are forced economically to rent —does not appear reasonable. *See* Minn. Stat. § 645.17(1) (1988).

Finally, in exercising its statutory duty under Minn.Stat. § .8.31 (1988) to investigate and enforce consumer protection laws, the attorney general has for many years applied the Act to leases and landlord conduct. In an amicus brief the attorney general provided an illustrative list of district court enforcement actions in which the consumer fraud provisions were successfully applied to deceptive practices in leased housing. The enforcement patterns support the inclusion of residential leases within the Act. We conclude that the trial court did not err in applying the Act to deceptive practices in leased housing.

## II. Recovery of Rent.

■ Separate from its application of the Act, the trial court allowed Love to recover previous rental payments. Amsler argues that Love is not entitled to recover rent paid while in possession of the house. He cites *Flint v. Sweeney*, 49 Minn. 509, 52 N.W. 136 (1892); and *Warren v. Hodges*, 137 Minn. 389, 163 N.W. 739 (1917), to support his assertion that a tenant is liable for rent if the tenant retains possession of the property and may avoid payment only by surrendering possession.

Amsler's assertion is an incorrect statement of law. Substantial changes have occurred in landlord-tenant law since 1917, most significantly the 1971 enactment of Minn.Stat. § 504.18, which implies "covenants of habitability" in all residential leases. These covenants may not be waived or modified. Minn.Stat. § 504.18, subd. 1 (1986). Under § 504.18 a

[t]enant may continue to pay rent and bring his own action to recover damages

---

**2.** *See, e.g., Fowler v. Bott*, 6 Mass. 62, 67 (1809) (noting that "a lease for years is a sale of the demised premises for the term" and "[t]he rent is in effect the price, or purchase money, to be paid for the ownership of the premises during the term"); W. Prosser, *Handbook of the Law of Torts*, § 63, 399 (4th ed. 1971) ("When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term"); *Monumental Properties*, 459 Pa. at 470–72, 329 A.2d 812 (reviewing the "substantial common-law authority that the leasing of property is identical to the sale of the premises"). *See also Love v. Pressley*, 34 N.C.App. 503, 239 S.E.2d 574, 583 (1977), *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978).

for breach of the covenants by the landlord.

*Fritz v. Warthen,* 298 Minn. 54, 58, 213 N.W.2d 339, 341 (1973). The trial court did not err in awarding damages of previously paid rent.

III. Fees, Costs and Filing Restrictions.

■ Minn.Stat. § 8.31, subd. 3a (1988), provides that a person injured by a violation of the Act

> may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney fees.

*Id.* Amsler argues that Love is not entitled to attorney's fees because she has not suffered any damages and thus has not been "injured."

The trial court, with evidentiary support, determined that Amsler engaged in deceptive practices. The effect of these practices and having to defend against them satisfies the requirement of "injury" under § 8.31.

■ Amsler also contests the trial court's award of expert witness fees and transcript costs. These fees and costs are authorized as "costs of investigation" under § 8.31 and separately authorized by Minn.Stat. § 563.01 (1988), the *in forma pauperis* statute, for which Love qualifies.

■ Contrary to Amsler's assertion, the trial court did not permanently enjoin Amsler from filing cases in Hennepin County. The trial court's order states that Amsler is "permanently enjoined from filing any cases in Hennepin County *without the prior approval of the Chief Judge of the Fourth Judicial District.*"

Because Amsler's due process rights are affected by this restriction it would have been preferable to provide a fuller opportunity to be heard. However, Minn.Stat. § 8.31, subd. 3 (1988), grants the courts "jurisdiction to prevent and restrain violations" of the Act, *id.;* requiring Amsler to obtain approval before filing suit is a reasonable way to curb Amsler's deceptive trade practices and abuse of the system without unduly restricting his right of access to the courts. *See Liedtke v. Fillenworth,* 372 N.W.2d 50, 52 (Minn.Ct.App.

1985), *pet. for rev. denied* (Minn. September 13, 1985) (trial court acted within its discretion by enjoining appellant from continuing a series of vexatious lawsuits). Because we assume that the restrictions will be reasonably applied, and only to the extent necessary to curb Amsler's improperly deceptive practices and restrain violations of the Act, we do not believe it is necessary to alter the restriction.

Finally, Love requests damages for a March 1987 injury sustained when the storm door slammed and a piece of glass cut her right hand and wrist. This claim was not pleaded in Love's complaint. At the close of trial Love's attorney made a motion to amend the pleadings to conform to the evidence, in accordance with Minn.R. Civ.P. 15.02 (1988). The trial court did not rule on the motion, and did not include findings on this issue in its judgment and decree. Because Love did not, by a motion for amended findings, obtain a trial court ruling, the issue is not appropriate for review. *See Frank v. Illinois Farmers Insurance Co.,* 336 N.W.2d 307, 311 (Minn. 1983).

Based on affidavits filed with the court we award Love $1,945.10 pursuant to Minn. R.Civ.App.P. 138 (1988) and Minn.Stat. § 8.31, subd. 3a (1988).

### DECISION

Affirmed.