## HUNTER'S RUN, LTD., etc. v HOELSCHER and EHRHART

### Case No. CO-86-3840

County Court, Orange County

July 15, 1987

**OPINION OF THE COURT**

JAMES C. HAUSER, County Judge.

*FINAL JUDGMENT*

This cause came before this court as a nonjury trial on April 9, 1987 and April 24, 1987. Because of the numerous issues and unique problems it is necessary to outline the procedural and factual history of this case.

148

## FACTUAL HISTORY

1. On June 5, 1986 the defendants, hereinafter referred to as tenants, hand delivered a letter to the plaintiff,[1] hereinafter referred to as landlord. The letter informed the landlord the tenants would withhold all future rents until certain housing code violations were corrected. June's rent was paid at the same time the letter was delivered.

2. A second withholding letter was sent by tenant's attorney[2] on July 11th, reemphasizing the tenants' withholding of rent until housing code violations were corrected.

3. The primary problem the tenants were experiencing was a leak in the roof. Both parties agree the leak entered the bathroom causing an inconvenience to the tenants. There were water stains on the wall and a disagreeable odor. The court finds the odor was caused by not only the water leakage, but by cats in the apartment.

4. The tenants were required to mop the water with towels; the towels later had to be thrown out. The cost of the towels was $92.50. This includes $20.00 spent on washing and drying towels, which would not have been spent but for the leak.

5. Whenever it rained the tenants had to go to a nearby restaurant to wash themselves, since the odor caused by the water damage was overpowering.

6. The landlord readily admits the leak was caused by the roof. The roof leaked because the roofing company which replaced the old roof did a faulty job. The landlord contacted other roofing companies to repair the roof, but they refused to do so unless they could *replace* the roof. This was economically unacceptable to the landlord.

7. It is conceded no repairs were begun within 7 days from the time the tenants gave the landlord the first withholding letter of June 5, 1987. The landlord did make some repairs to the premises within 7 days of the second withholding letter, of July 7, but all the repairs, including the leaky roof, were not completed.

8. At a meeting between the landlord and tenants on either July 13th or July 15th, the landlord orally agreed to move the tenants to another apartment. The landlord agreed to pay the moving expenses, but refused to pay any charges the tenants might incur for utility or phone deposits. At trial there was no evidence of what, if any, these deposits might have cost.

---

[1] Tenant's exhibit 2

[2] Tenant's exhibit 1

9. The landlord also refused to pay any attorney fees the tenants had incurred up to that point.

10. On August 18th, the landlord's attorney wrote a letter to the tenants agreeing to pay not only $100 for moving costs, but any utility or phone deposits. There was no mention of whether the landlord would pay the tenant's attorney fees.

11. It is agreed by both parties from July 11th until the tenant vacated the premises in October, the landlord made a concerted effort to remedy the roof problem, but was completely unsuccessful in doing so.

12. In attempting to remedy the problem the landlord cut a huge hole in the bathroom ceiling to investigate the problem. The hold in the ceiling was never covered while the tenants remained in the premises. The landlord claimed he did not patch the hole because any new dry wall ceiling installed, would have to later be cut in order to determine the leak's origin.

13. The tenants physically vacated the premises on September 30th, but did not return the keys until October 5th.

14. The tenants never gave the landlord written notice they were vacating the premises, nor did they give the landlord their new address.

15. The written lease expired September 30th, 1986.

16. The tenant orally informed the landlord to send all correspondence to their attorney.

17. When the tenants vacated, they left the premises in a state of disrepair.[3]

18. The court found there was approximately $305 worth of damages, not including unpaid rent, to the premises. This included $75 for ridding the apartment of cat odor caused by three cats; the landlord also had to dispose of the cats' litter box.

19. Both parties agree the tenant had posted the following deposits:

| | |
|---|---|
| a. a nonrefundable pet deposit | $100 |
| b. a refundable pet deposit | $100 |
| c. a security deposit | $150 |

20. The landlord mailed the tenants a letter withholding the deposits

---

[3] See plaintiff's exhibits 1 and 5

to the tenants' last known address, to wit the apartment recently vacated by the tenant.

21. Although the landlord knew the tenants were represented by counsel, no written notice of the withholding of the deposit was mailed to the tenants' attorney.

22. The landlord's letter withholding the deposit was not mailed by return receipt certified mail, as required by the statute.

23. The tenants claim they never received the letter sent by the landlord claiming the landlord was withholding the deposit.

24. The tenants did not pay rent of $350 for the months of July, August, September or October.

## PROCEDURAL HISTORY

1. On July 10th the landlord served the tenants with a 3 day notice to pay rent or vacate the premises.

2. On July 22nd, the landlord filed suit to evict the tenants from the premises and to recover back rent.

3. The tenants responded on July 20th, with various affirmative defenses and counterclaims. The tenants sought not only to reduce the rent, but to recover damages for nuisances. One of their affirmative defenses was the landlord had failed to comply with the fictitious name statute.

4. On August 20th, this court entered an order staying all proceedings because the landlord had failed to comply with the fictitious name statute.

5. During the course of the proceedings the tenants posted $700 in the court registry. The tenants were required to pay an additional total of $14.00 in court costs to the clerk to post this money.

6. Prior to the court making a ruling on the issue of possession the tenants vacated the premises. Had the court decided the issue of possession the court would have ruled the tenant was entitled to remain in possession because of the numerous material housing code violations.[4]

## CONCLUSIONS OF LAW

### 1. LANDLORD'S ENTITLEMENT TO RENT

The court rules the landlord is entitled to $175 rent not $350 for the

---

[4] Plaintiff's exhibit 3

months of July-September.[5] The landlord is also entitled to the pro-rated rent for October because although the tenant physically vacated the premises by September 30th, he did not return the key until October 5th. Until the key was returned the landlord had no knowledge the tenant had vacated. The court rules for purposes of rent owed, the tenant vacated the premises when the key was returned, on October 5th, not when the tenant physically vacated the premises on September 30th.[6]

It is a case of first impression whether the tenant is liable for rent for the entire month of October or merely the first 5 days. On the one hand Florida Statute 83.46(1) requires all rent be paid at the beginning of each rental period, and rent is apportioned from day to day.

However in a case decided prior to the passage of this statute, the Florida supreme court ruled the landlord is entitled to the *entire* rent due and owing, not just a pro rata share.[7] An inspection of the legislative history of Fla. Stat. 83.46(1) reveals the common law as enunciated in *Wagner v Rice* was changed. Unless a lease holds to the contrary a tenant will be liable for only his pro rata share and not the entire rent in advance.[8]

The lease expired September 30th and this court rules Florida statute 83.46(1) modifies the common law, making the rent apportionable day by day. The tenant therefore owes rent for only 5 days of October. Since the monthly rent was reduced from $350 to $175, the tenant owes ⅙ of that amount or $29.16. The total rent owed by the tenant is as follows:

| | |
|---|---|
| July rent | $175 |
| August rent | $175 |
| September rent | $175 |
| October rent | *$ 29.16* |
| Total for Landlord | $554.16 |

---

[5] See paragraph 2 of this order "Tenant's claim for rent reduction" for an explanation why the rent was reduced.

[6] *Bland v Greca,* 449 A.2d 1052 (Conn. Super. 1982)

[7] *Wagner v Rice,* 97 So.2d 267 (Fla. 1957) In the *Wagner* case rent was payable in advance on a yearly basis. When the tenant remained on the premises for a month after he should have vacated, the supreme court ruled the landlord was entitled to the entire years rent.

[8] Report and Recommendation of Florida Law Revision Council, March 9, 1987, page 14, a copy of which is attached as court exhibit A.

152

## 2. TENANTS' CLAIM FOR RENT REDUCTION

The testimony before the court by the tenant was that the premises were so uninhabitable no rent should be required. There is no question the leaks in the bathroom reduced the value of the premises. On the other hand the tenants were able to reside in the bedroom and use the kitchen. The landlord agrees the rent should be reduced, but denies the entire rent should be withheld. The court rules the rent should be reduced by 50% or $175 per month because of the housing code violations. This amount is consistent with other courts who have been required to resolve similar issues.[9]

The landlord argues he made a good faith attempt to resolve the problem and this should absolve any reduction of the rent after July. The court disagrees. Florida statute 83.56(1) permits a tenant to withhold rent if the landlord fails to comply with Florida statute 83.51 (the housing code requirements) within 7 days of written notice by the tenant. Florida statutes 83.56(1)(b) and 83.60(1) permit the trier of fact to reduce the rent by a proportionate amount if the landlord fails to comply with housing code violations. Nothing in any of these statutes prevents the reduction of rent because the landlord in good faith attempted to repair the premises, but was unsuccessful in doing so.

The highest courts of both New York and Massachusetts have ruled the tenant is entitled to reduce rent even though the landlord made a good faith effort to make the repairs.[10] Both states ruled the good faith efforts of the landlord were legally irrelevant to the right of the tenants to withhold rent.

In the New York case the landlord's employees went on strike resulting in garbage not being collected, the elevator not working and numerous housing codes not being corrected. The landlord was prevented from remedying these problems because of the picket lines. The court held although the landlord attempted to resolve these problems in good faith, the fact he failed to do so permitted the tenants to withhold rent. If the landlord suffered damages, such as a loss of rent, he could sue the striking workers. Under no circumstances was it the tenants' fault the premises were in a state of disrepair.

The analogy applies to this case as well. If in fact the damage to the

---

[9] See Florida Residential Landlord-Tenant Law, *James C. Hauser,* D & S Publishing, Volume 2 Appendix 16.

[10] *Park West Management v Mitchell,* 391 N.E. 2d 1288 (N.Y. 1979); *Simon v Solomon,* 431 N.E. 2d 556 (Mass. 1981); *Berman & Sons v Jefferson,* 396 N.E. 2d 981 (Mass. 1979)

premises was caused by the leaky roof, any damages the landlord must pay the tenant may be recouped from the roofing company was allegedly failed to install a leak free roof.[11]

## 3. TENANT'S CLAIM FOR NUISANCE

The tenants claim they are not only entitled to a reduction of the rent, but additional damages for the nuisance caused by the hole in the ceiling. With the hole in the ceiling, water stains on the walls and odor caused by the moisture, no reasonable person would want to bring their friends or family to the apartment. If the defendant happened to be going to the bathroom while it was raining, he would have need an umbrella to keep the rain from striking him.[12]

Further the dining room chandelier was hanging by a wire. Although it is debatable how safe the chandelier was, there can be no question it detracted aesthetically from the premises.

Counsel for both sides states they were unable to provide the court with any Florida case law on whether a tenant may maintain an independent suit for nuisance in addition to withholding rent from the landlord. This court has found two California cases which have permitted a tenant to sue his landlord for nuisance if the failure to make repairs constituted substantial, not just minimal interference with the tenant's use and enjoyment of the premises.[13]

Based on the facts of this case, the court is persuaded the tenant has stated a cause of action for nuisance. The hole in the bathroom ceiling was cut in July, yet no repair to the ceiling was made until after the tenant vacated the premises. The court rules the failure of the landlord to take even minimum steps to cover this hole was a deliberate attempt to force the tenant to vacate their premises. The court rules the tenant is entitled to $250 for the nuisance caused by the hole in the ceiling. The only reason this court is not awarding a higher amount is the landlord offered to move the tenant to another apartment and the landlord would pay all the expenses except attorney fees.[14]

---

[11] *Lindsey v H.H. Raulerson Jr. Memorial Hospital,* 505 So.2d 577 (Fla. 4th DCA 1987)

[12] See Defendant's exhibit 7 which is a VCR tape showing the hole in the bathroom was ½ of the ceiling.

[13] *Smith v David,* 176 Cal. Reptr. 112 (Cal. 5th DCA 1981); *Stoiber v Honeychuck,* 162 Cal. Reptr. 194 (Cal. the DCA 1980). See also *Simon v Solomon* 431 N.E. 2d 556 (Mass. 1981)

[14] Although the offer was silent regarding attorney fees, since attorney fees are awardable by statute, case law indicates the tenant would have been entitled to a

Total for tenant $250 for nuisance.

## 4. TENANT'S CLAIM FOR DAMAGES TO PERSONAL PROPERTY

The court rules the tenant is entitled to $92.50 for replacement of towels which were used to mop the bathroom floor every time it rained. This includes $67.50 which the tenant spent to clean and dry these towels before they wore out.

Total damages to personal property for the tenant $92.50

## 5. TENANT'S CLAIM FOR DAMAGES PRIOR TO THE TENANT WITHHOLDING RENT

The tenant seeks damages for the months of May-June because during that time period the fan in the stove was not working properly and the leak in the bathroom began. There was testimony from a housing code inspector the fan failed to comply with the housing code.

However the tenant paid rent for the months of May through June. By paying rent, this court rules the tenant waived his right to file suit for damages.[15]

### 6. SECURITY DEPOSIT

A nonrefundable pet deposit may be used to offset damages to the apartment.

The tenant had a $150 security deposit and a $200 pet deposit, of which $100 was nonrefundable. Based on the evidence before the court, the court has found the landlord suffered damages in the amount of $306, excluding rent. Part of the damage was caused by the tenants' cats. The purpose of the nonrefundable pet deposit was to compensate the landlord for damages caused by pets. It therefore is only fair the $100 nonrefundable pet deposit be used to offset any damages the tenant did to the apartment which were directly or indirectly caused by his pets.

### B. Notice Requirements Under 83.49

1. The tenant was not required to give 7 days notice he was vacating the premises because he left after the lease expired.

---

reasonable attorney's fee. *River Road Construction Co. v Ring Power Corp.,* 454 So.2d 38 (Fla. 1st DCA 1984); *Parliament Insurance Company v That Girl in Miami, Inc.,* 377 So.2d 1011 (Fla. 3d DCA 1977).

[15] Fla. Stat. 83.56(5) see also *K.D. Lewis Enterprises v Smith,* 445 So.2d 1032 (Fla. 5th DCA 1984)

Fla. Stat. 83.49(5) requires the tenant to give the landlord 7 days written notice he is vacating the premises if the tenant vacates prior to the end of the written lease. In the case at bar the lease ended on September 30th and the tenant had already physically vacated the premises, although he did not return the key until October 5th.

The landlord argues the tenant still should have been required to give 7 days notice because the parties were involved in an eviction suit and the landlord had good reason to believe the tenant would not vacate by the end of the lease. This court disagrees. The purpose of Fla. Stat. 83.49(5) is to put the landlord on notice the tenant has unexpectedly vacated the premises prior to the end of the lease and inform the landlord of the tenant's new address. The statute simply does not apply if the tenant vacates at the end of the lease. The fact the landlord was surprised the tenant vacated the premises at the end of the lease during the eviction suit is legally irrelevant.

2. The landlord was only required to send notice he was withholding the deposit to the tenant not to the lawyer for the tenant.

The tenant's lawyer claimed the landlord failed to send proper notice the landlord was withholding the deposit, because a copy of the notice was not sent to the lawyer. The lawyer reasoned since the suit for eviction was already being litigated the landlord had an obligation under the rules of civil procedure to send him a notice. The notice was sent to the tenant's last known mailing address, (the vacated apartment) and not his attorney.

This court disagrees. At no time did the tenant specifically inform the landlord to send the notice withholding the deposit to his attorney. Fla. Stat. 83.49(3) requires notice be sent to the tenant's last mailing address. If the tenant wanted the landlord to send the notice to his attorney, the tenant was under an affirmative obligation to give *written* notice to his landlord to do so.

The tenant's attorney argues the landlord knew the notice withholding the deposit had to be sent to him because the parties were involved in litigation. The tenant orally informed the landlord to send all correspondence to his attorney. However this court believes the landlord could have fairly interpreted that to mean correspondence regarding the litigation and not correspondence regarding the deposit.

The parties were not in litigation over the security deposit at the time the notice was sent. The tenant is confusing the obligation of the landlord to comply with the rules of civil procedure regarding

issues being litigated with the obligation of the landlord to comply with the notice requirements of Fla. Stat. 83.49.

Finally, as a matter of public policy, a landlord should not have to guess as to where the notice withholding the deposit should be sent. If in fact the landlord had sent the notice to the attorney and not the tenant, the tenant could come into court and claim the landlord had failed to comply with the statute by failing to send the notice to the tenant personally. Unless specific written notice is given to the landlord, a notice withholding security deposit must be sent to the tenant's last known mailing address, which in this case was his former apartment.

3. The landlord's notice to the tenant withholding the security deposit was fatally defective because it was not sent by certified mail, return receipt requested.

The landlord concedes he failed to send the written notice withholding the security deposit by certified mail, return receipt requested. The landlord offered no proof the letter was received by the tenant. The landlord speculated the reason the tenant did not receive the notice[16] was because it was mailed to the tenant's last known mailing address, to wit the apartment he had just vacated.

Mr. Hoelscher denied receiving the notice. He testified he had filled out a "green card" at the post office requesting the post office to forward his mail. He also testified he received letters which had been mailed to his former residence which the post office had forwarded to his new address.

The tenant claims the failure of the landlord to mail the security deposit withholding letter by certified mail, return receipt requested, makes such letter fatally defective and the tenant automatically is entitled to the return of the deposit.

On the other hand the landlord claims it is a technical defect and the letter substantially complies with the statute.[17] The landlord's argument the notice "substantially" complied with the statute is without merit. The clause substantial compliance as used in Fla. Stat. 83.49(3)(a) does not refer to the **manner** in which the letter is to be sent, but rather the **language** which must be used in the letter.

There is a strong policy reason why the legislature chose to require the notice be sent by certified mail, return receipt requested, rather

---

[16] Mr. Hoelscher denied ever receiving the deposit withholding letter.

[17] Fla. Stat. 83.49(3)(a)

157

than by ordinary mail. By demanding return receipt, the landlord will obtain proof from the post office of not only when the security deposit letter was mailed, but when the letter was received by the tenant.[18] If in fact the letter was not received, the post office will disclose what attempts were made to deliver the letter. This court notes the legislature chose not to put the same stringent requirements on the tenant's response to the landlord's notice withholding the security deposit.[19]

Since the notice was not properly sent, this court rules the entire notice is defective and the landlord automatically forfeits the deposit.[20] The tenant is therefore entitled to the return of the $250 deposit which includes the $100 pet deposit.

## 7. CALCULATION OF DAMAGES

a. Damages for the tenant

| | |
|---|---|
| 1. Nuisance | $250 |
| 2. Towels (cleaning and replacement) | *$ 92.50* |
| Total damages for tenant subject to set off | $342.50 |
| Security and pet deposit *not* subject to set off | $250[21] |

b. Damages for landlord

| | |
|---|---|
| 1. Rent from July 1-Oct. 5th (rent for October was prorated) | $554.16 |
| 2. Damages not covered by deposit | *$205[22]* |
| Total damages for landlord | $759.16 |
| c. Money posted into court registry by tenant | $700.00 |

[18] The date the tenant receives the notice is crucial because the tenant then has 15 days to respond to the landlord's notice withholding deposit. If the tenant fails to respond, he forfeits the deposit.

[19] Fla. Stat. 83.49(3)(b) requires the tenant to respond within 15 days. The response need not be sent return receipt requested, nor even be in writing.

[20] There has been no case deciding this point in Florida. However a Michigan court has ruled if a landlord's notice is defective the tenant is automatically entitled to the return of the deposit. *Smolen v Dahlmann Apts, Ltd.,* 338 N.W. 2d 892 (Mich. App. 1983)

[21] The security deposit was $150, the refundable pet deposit was $100 making the total $250. The court is not including the $100 nonrefundable pet deposit.

[22] The court has subtracted the $100.00 nonrefundable pet deposit from this figure. See *Golden v Riverside Apartments,* 488 So.2d 476 (La. App. 1986)

d. Money in the court registry which shall be returned to tenant $283.34

Case law in Florida and other jurisdictions is clear; if the landlord fails to send proper written notice he is retaining the deposit, the deposit is forfeited and the deposit may not be offset against any damages owed by the tenant to the landlord.[23] The tenant will be entitled to an additional $33.34, which will be explained in paragraph 7f of this order, for a total of $283.34. The clerk is hereby directed to pay the tenant $283.34 from the court registry as quickly as possible.

e. Money in the court registry which shall be returned to the landlord.

| | |
|---|---|
| Landlord's damages | $759.16 |
| Tenant's damages subject to set off | *$342.50* |
| Total damages for the landlord after set off | $416.66 |

The clerk is hereby directed to pay the landlord $416.66 from the court registry as quickly as possible.

f. Remaining money in the court registry

| | |
|---|---|
| Amount posted in the court registry by tenant | $700.00 |
| Landlord's recovery | $416.66 |
| Tenant's recovery | *$250.00* |
| Total $ paid from the court registry to the parties | *$666.66* |
| Total remaining in court registry | $ 33.34 |

Since the tenant originally posted the entire $700.00, this court rules the tenant is entitled to the remaining $33.34 posted in to the court after set off of the damages to both sides.

8. PREVAILING PARTY

Florida statute 83.48 permits, but does not require a court to award attorney fees to the prevailing party. In this unusual case both parties claim they are the prevailing party.

Normally when a landlord seeks possession and rent, the main issue is possession. If the tenant prevails on the issue of possession and rent is reduced, the tenant will be considered the prevailing party. In this case neither party prevailed on the issue of who was entitled to possession of the premises because before the issue could be adjudi-

---

[23] *Ancime v Durene,* 448 So.2d 1208 (Fla. 3d DCA 1984); *Matter of Hasty,* 25 B.R. 429 (M.D. Fla. 1982). See also *Paulik v Coombs,* 355 N.W. 2d 357 (Wisc. App. 1984); *Oak Park Village v Gorton,* 341 N.W. 2d 788 (Mich. App. 1983); *Sherwin v Carbana Club,* 433 N.E. 2d 932 (Ohio App. 1980)

cated, the tenant vacated the premises.[24] Had the court ruled on the issue, the court would have found material housing code violations, entitling the tenant to remain on the premises and denying the landlord possession.

a. Landlord's theory

The landlord claims he is the prevailing party because he recovered more money than the tenant.[25]

b. Tenant's theory

The tenant claims he is the prevailing party for a variety of reasons.

1. The tenant prevailed on the issue of the security deposit and is entitled to the full $250 deposit.

2. Had the court adjudicated the issue of possession, the tenant would have prevailed.

3. The tenant's rent was reduced by 50% each month or $554.16

4. The court would add a 4th theory, the amount posted by the tenant into the court registry was more than sufficient to pay the landlord any sums due him.

c. Court's decision

1. Security Deposit

Since the tenant recovered the full security deposit there can be no question the tenant is the prevailing party on that issue[26] and is entitled to a reasonable attorney fee.[27]

2. Damages

The more difficult question is which party prevailed on the issue of damages, specifically the reduction of rent. If the tenant reduces rent by any amount, is he automatically considered the prevailing party or is it necessary for the tenant to recover more than the landlord? In

---

[24] See procedural history #6. The tenant made a tactical decision on August 20th to postpone the trial on possession by requiring the landlord to comply with the fictitious name statute. Fla. Stat. 865.09. The court stayed the issue of possession until the landlord complied with the statute. By the time the landlord complied, the tenant vacated the premises, making the issue moot.

[25] The landlord has recovered $416.66 and the tenant has recovered $283.34. All of this money has been paid from the court registry in which the tenant had initially posted $700.

[26] *Ancime v Durene,* 448 So.2d 1208 (Fla. 3d DCA 1984)

[27] Fla. Stat. 83.49(3)c

160

order for the court to make this determination it is necessary to understand the legislative design of the landlord tenant statute when a tenant withholds rent because of housing code violations. The design is as follows:

1. The tenant sends a letter to the landlord informing the landlord if certain repairs are not made within 7 days, the tenant will withhold rent.[28]

2. The landlord makes the necessary repairs or

3. He fails to make the repairs or disputes the necessity of the repairs and gives the tenant a notice to pay the rent or vacate the premises.[29]

4. If the tenant fails to vacate the premises, the landlord files a complaint for eviction in county court.[30]

5. In order to defend an action for an eviction, the tenant is statutorily required to post rent into the court registry.[31]

6. The court then determines not only who is entitled to possession, but how much, if any, the rent should be reduced.[32]

It seems clear to the court if the tenant reduces the rent by any amount, the tenant would have to be considered the prevailing party or else the intent of the statute would be defeated. If tenants had to recover more money in the court registry than the landlord in order to recover the tenant's attorneys fees and not have to pay the landlord's attorney fees, the tenant would have to reduce rent by more than 50%. The result would be to discourage tenants from enforcing their statutory right to withhold rent and housing code violations would go unreported. On the other hand a landlord who knows he will be responsible not only to make repairs, but pay the tenant's attorney fees, will be much more willing to make the repairs. Under Florida law the tenant does not have the option of paying the landlord the rent owed and then suing the landlord to force him to make the repairs.[33]

There is a second argument. As previously stated the tenant is required

---

[28] Fla. Stat. 83.56(1)

[29] Fla. Stat. 83.56(3)

[30] Fla. Stat. 83.59

[31] Fla. Stat. 83.60(2); mobile home tenants are required to post rent based on Fla. Stat. 723.063(2).

[32] Fla. Stat. 83.60(1)

[33] Fla. Stat. 83.56(5) holds a tenant who pays rent with actual knowledge of a noncompliance waives his right to complain about those violations.

to post the amount of accrued rent into the court registry.[34] These statutes are unique in legal jurisprudence in requiring a defendant to post the amount of damages sought before the tenant is legally entitled to defend a cause of action. The landlord is secure in the knowledge if he prevails he will recover the rent owed, because the accrued rent is in the court registry. It seems only fair in exchange for this security, the landlord be liable for attorney fees if the rent is reduced.

3. Tenant is entitled to attorney fees for defending the eviction.

Having ruled the tenant is the prevailing party, the court must now decide if the tenant is entitled to attorney fees for the time spent defending the eviction port of the case. This court has not found any case directly on point. In a case involving multi defendants, the Florida supreme court held if the plaintiff's claims were separate and distinct (as opposed to being an alternative theory of liability for the same cause of action), a plaintiff would only be entitled to attorney fees for the counts he prevailed on and not for the entire case.[35] The First District Court of Appeal was required to decide if a plaintiff who prevailed on a theory which permitted attorney fees and on a theory which did not permit attorney fees was entitled to attorney fees for the entire case? In holding the plaintiff was entitled to attorney fees for the entire case, the 1st DCA held the key question was whether the alternative theories arose out of the same transaction.[36] If they did, the plaintiff would be entitled to attorney fees for the entire case.

In the case at bar, the defense to eviction based on housing code violations and the tenant's suit to reduce rent because of the same housing code violations are so inextricably intertwined to require this court to award attorney fees to the tenant based on the entire case, not just the damage portion. The tenant is therefore declared the prevailing party for the entire case. If the parties cannot agree to a reasonable attorneys fee, the tenant's attorney shall notify this court to set a hearing on the sole issue of the amount of attorney fees.

## SUMMARY

This case has presented a virtual law school exam on landlord tenant issues which have not been decided by appellate courts in this state. Since most of these are typical issues, the court certifies the following questions to the 5th DCA.

---

[34] Fla. Stat. 83.60(2); mobile home tenants are required to post rent based on Fla. Stat. 723.063(2).

[35] *Folta v Bolton,* 493 So.2d 440 (Fla. 1986)

[36] *Heindel v Southside Chrysler-Plymouth,* 476 So.2d 266 (Fla. 1st DCA 1985)

1. Does Fla. Stat. 83.46(1) modify *Wagner v Rice,* 97 So.2d 267 and require a tenant who is evicted to pay only the pro rata share of rent owed at the time of eviction, instead of the entire amount owed on the lease?

2. Is there a cause of action by a tenant against a landlord in nuisance?

3. May a nonrefundable pet deposit be deducted from damages actually done to the apartment?

4. If the landlord fails to send the notice withholding the security deposit by certified mail, return receipt requested, is said notice automatically defective?

5. Who is the prevailing party for purpose of attorney fees if

a. the court rules the tenant's rent should be reduced,

b. both the tenant and landlord recover sums from the court registry which had been posted by the tenant, and

c. the landlord's sum exceeds the tenant's sum?

6. Is a tenant entitled to withhold rent under Fla. Stat. 83.56 if a landlord makes a good faith, but unsuccessful effort, to make the necessary repairs within 7 days.

DONE AND ORDERED in Chambers at Orlando, Orange County, Florida, this 15th day of July, 1987.

