Melanie CASTILLO–CULLATHER,
Appellant–Plaintiff,

v.

Michael POLLACK, Abodes
Management/Construction,
Appellees–Defendants.

No. 53A01–9703–CV–98.

Court of Appeals of Indiana.

Sept. 8, 1997.

---

John M. Irvine, Student Legal Services, Bloomington, for Appellant–Plaintiff.

Rebecca T. Clendening, Bingham Summers Welsh & Spilman, Bloomington, for Appellees–Defendants.

## OPINION

BAKER, Judge.

Appellant-plaintiff Melanie Castillo–Cullather appeals the trial court's judgment in favor of appellees-defendant Michael Pollack and Abodes Management/Construction (Abodes), Castillo–Cullather's landlord, on her claim seeking the return of her security deposit. Castillo–Cullather presents several issues for our review, which we consolidate and restate as follows: (1) whether Abodes was permitted to deduct carpet cleaning, painting and general cleaning costs from her security deposit under Indiana's Security Deposit statute;[1] (2) whether the amount of the painting deduction was proper; (3) whether Abodes sufficiently justified and itemized the general cleaning deduction; and (3) whether the trial court erred by not awarding her attorney's fees.

### FACTS

On April 14, 1993, Castillo–Cullather and her husband, Nick, entered into an agreement to lease a new apartment from Abodes beginning on August 1, 1993, and ending on August 13, 1994.[2] The lease was secured by a $450 deposit. Pursuant to the terms of the rental agreement, the deposit would be returned at the expiration of the lease if the premises were "not damaged beyond normal wear." Record at 175. Additionally, the lease required Castillo–Cullather to steamclean the carpets before vacating the premises and to clean various appliances and other items in the apartment. Further, any cleaning required to return the premises to good condition and any painting required to return the walls to an "as new" condition would be charged to Castillo–Cullather.

---

**1.** IND.CODE §§ 32–7–5–1 to 32–7–5–19.

**2.** Castillo–Cullather's husband is not a party to this appeal.

On August 12, 1994, Castillo–Cullather, her husband and Liz Hennessey, Abodes' property manager, conducted a joint "move-out" inspection. During this inspection, Hennessey noted that several appliances and other areas in the apartment needed cleaning, that the carpets had not been steam-cleaned and that several walls needed painting. She did indicate, however, that the premises were in "good condition" and that there were no damages to the apartment.

Near the end of the inspection, Nick Cullather asked Hennessey whether Abodes would return the entire security deposit. When Hennessey informed him that they would be charged for the cleaning and painting which still needed to be completed as a matter of company policy, the Cullathers protested, stating that the walls and carpet were in good condition and did not need further cleaning. As a result, Hennessey contacted Jeff Kleiner, Abodes' construction and maintenance manager, who inspected the premises and noted on the inspection form that the "walls are scuffed, splat in kitchen, scruffy throughout." R. at 179.

Thereafter, on September 12, 1994, Abodes provided Castillo–Cullather with an itemized list of charges which were deducted from her security deposit and a check for $190.55, representing the balance of the deposit. According to the notice sent to Castillo–Cullather, Abodes had deducted $140 for painting, $65 for carpet cleaning, $26 for general cleaning, $25 for a washer and dryer charge and $3.45 for turning on the electricity to clean the apartment, for total deductions of $259.45.

In November of 1994, Castillo–Cullather filed a complaint against Abodes for the return of the remainder of her security deposit. Prior to the trial on the complaint, Castillo–Cullather filed a motion requesting the trial court to shift the burden of proof to Abodes to show that the deductions from the deposit were for damages exceeding normal wear and tear, which the trial court denied. Following a bench trial on September 24, 1996, the court entered findings of fact and conclusions of law, determining that Abodes properly deducted the majority of charges from Cullather's security deposit. However, the trial court concluded that Abodes overcharged Cullather by $10 for the carpet cleaning and improperly deducted the cost of turning on the electricity to the apartment. As a result, the court entered judgment in favor of Cullather for $13.45. The court then denied Cullather's request for attorney's fees on the grounds that she had only received a minimal award, which was primarily the result of a clerical error. This appeal followed.

## DISCUSSION AND DECISION

### I. Standard of Review

■■■ Initially, we note our standard of review. When a party has requested specific findings of fact pursuant to Ind.Trial Rule 52(A), as here, we cannot affirm the judgment on any legal basis. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App.1991), *trans. denied.* Instead, we must determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* A finding of fact is clearly erroneous when there is no evidence or inferences drawn therefrom which support it. *In the Matter of M.B.*, 666 N.E.2d 73, 76 (Ind.Ct.App.1996), *trans. denied.* In determining whether the findings or judgment are clearly erroneous, we do not reweigh the evidence or reassess the credibility of the witnesses; rather, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *DeHaan*, 572 N.E.2d at 1320.

### II. Security Deposit Statute

Castillo–Cullather first contends that the trial court erroneously concluded that Abodes' deductions for carpet cleaning, painting, and general cleaning were lawful under Indiana's Security Deposit statute. Specifically, she contends that there was no evidence that Abodes' deductions from her security deposit were for damages that were not the result of ordinary wear and tear and,

therefore, the deductions were prohibited by section 13 of the Security Deposit statute.[3] In a related argument, Castillo–Cullather contends that the trial court erred by denying her request to shift the burden of production and persuasion to Abodes to show that its deductions were not for ordinary wear and tear.

IND.CODE. § 32–7–5–12(a) summarizes the conditions under which a landlord may retain a tenant's security deposit and provides, in pertinent part, as follows:

> (a) Upon termination of a rental agreement, all of the security deposit held by the landlord shall be returned to the tenant, except for any amount applied to:
>
> (1) the payment of accrued rent;
>
> (2) the amount of damages that the landlord has or will reasonably suffer by reason of the tenant's noncompliance with law or the rental agreement; and
>
> (3) unpaid utility or sewer charges that the tenant is obligated to pay under the rental agreement;
>
> all as itemized by the landlord in a written notice delivered to the tenant together with the amount due within forty-five (45) days after termination of the rental agreement and delivery of possession. . . .

If the landlord fails to comply with these requirements, the tenant may recover the amount of security deposit due the tenant and reasonable attorney's fees. I.C. § 32–7–5–12(b).

■ Here, Castillo–Cullather's rental agreement specifically required her to keep the premises clean, steam-clean the carpet upon vacating the apartment and remove all scuffs and other marks from the walls to restore them to their prior condition. The rental agreement further provided that any cleaning that was necessary to return the premises to a "good condition" or painting that was required to remove scuff marks from the walls would be charged to her. As Castillo–Cullather concedes, she failed to steam-clean the carpet upon the expiration of the lease. Furthermore, the record reveals, and Castillo–Cullather does not dispute, that there were scuffs and other marks on the

walls of the apartment at the end of her tenancy and that the move-out inspection form indicated that several areas within the apartment needed further cleaning. As we explained in *Miller v. Geels*, 643 N.E.2d 922, 927 n. 9 (Ind.Ct.App.1994), *trans. denied*, "Where the tenants fail to meet their obligation under the lease agreement to clean the rental unit, the landlord must incur the expense of doing so and is thereby damaged." Based on this evidence and the fact that Abodes sent written notice and the balance of the security deposit to Castillo–Cullather within forty-five days after the lease terminated, Abodes properly deducted the cleaning and painting charges from the security deposit, pursuant to section 12(a), as damages resulting from the tenant's noncompliance with the rental agreement.

■ Nevertheless, Castillo–Cullather contends that section 13(1) of the Security Deposit statute prohibits a landlord from using a tenant's deposit merely because of her noncompliance with a rental agreement. Under section 13(1), "[a] security deposit may be only used ... [t]o reimburse the landlord for actual damages to the rental unit ... that are not the result of ordinary wear and tear expected in the normal course of habitation of a dwelling." I.C. § 32–7–5–13(1). According to Castillo–Cullather, this language prohibits Abodes from using her security deposit, pursuant to I.C. § 32–7–5–12(a)(2), to enforce the cleaning and painting provisions of the rental agreement unless it proves that any damage to the carpet and the walls exceeded the ordinary wear and tear expected as a result of the normal use of the apartment. We disagree.

When construing a statute, we attempt to reconcile all of its provisions, even those apparently in conflict with one another. *Hilburt v. Town of Markleville*, 649 N.E.2d 1036, 1040 (Ind.Ct.App.1995), *trans. denied*. Here, notwithstanding Castillo–Cullather contention that section 13 of the Security Deposit statute conflicts with section 12, we believe these provisions can be harmonized. For example, the lease agreement in the present case specifically sets out the condi-

---

**3.** IND.CODE § 32–7–5–13.

tion of the apartment at the beginning of the lease and the tenant's responsibilities for cleaning the apartment upon termination. In particular, the lease requires the tenant to steam-clean the carpets and states that the tenant will be responsible for the cost of painting all walls in the apartment which have scuffs or markings that cannot be removed. As such, the lease establishes an objective standard to determine the condition of the apartment upon termination of the lease and which party should bear responsibility for the various costs associated with cleaning and repairing the premises. In essence, therefore, the cleaning and painting provisions in the lease define what constitutes ordinary wear and tear, which is the responsibility of the landlord under section 13, and what constitutes damages exceeding ordinary wear and tear, which is the responsibility of the tenant under section 12.[4] Thus, by deducting damages for Castillo–Cullather's failure to comply with the cleaning and painting provisions of the lease agreement, Abodes used the security deposit, pursuant to the parties' freely-bargained agreement, to reimburse itself for expenses it incurred in repairing damages that were "not the result of ordinary wear and tear expected in the normal course of habitation of a dwelling." As a result, Abodes' deductions were proper under both section 12 and section 13 of the Security Deposit statute.[5]

Our determination that the parties may contractually define "ordinary wear and tear" is consistent with the long-standing policy in this State allowing parties the freedom to contract. See, e.g., Franklin Fire Ins. Co. v. Noll, 115 Ind.App. 289, 58 N.E.2d 947 (1945) ("[U]niform trend of the decisions in Indiana clearly upholds the right of freedom of contract, guaranteed by both the Federal and State Constitutions...."). Indeed, our courts presume that contracts represent the freely bargained agreement between the parties and that it is in the public's best interest not to unnecessarily restrict peoples' freedom of contract. Fresh Cut, Inc. v. Fazli, 650 N.E.2d 1126, 1129 (Ind. 1995). As a result, we have upheld lease agreements which have delegated cleaning and repair duties to tenants or defined what constitutes damages. See, e.g., Miller, 643 N.E.2d at 927 (Security Deposit statute not intended to limit landlord's and tenant's right to contractually define what constitutes "other damages" under statute).

Furthermore, upholding the parties freedom of contract in the present case ultimately benefits the tenant. By requiring compliance with the Security Deposit statute while allowing the parties the flexibility to define

---

4. Although the rental agreement in the present case always requires the tenant to steam-clean the carpets upon termination of the lease, it nevertheless distinguishes between normal wear and tear and other damages. Under the lease, the purpose of the steam-cleaning provision is not to repair the nap or the fibers within a carpet, which naturally deteriorate due to normal use and are, therefore, the proper responsibility of the landlord. Instead, steam-cleaning is designed to ensure that dirt which accumulates in the carpet during a tenant's occupancy is removed. By placing the responsibility on the tenant to steam-clean the carpet in order to remove dirt, the rental agreement essentially defines dirt as damage exceeding normal wear and tear. This is consistent with Indiana law. See Miller, 643 N.E.2d at 927 ("Objects which have accumulated dirt and which require cleaning have not gradually deteriorated due to wear and tear. Rather, such objects have been damaged by dirt, although they are usually capable of being returned to a clean condition.")

5. Castillo–Cullather also argues that she cannot be held responsible under the contract for painting the walls of the apartment because the Bloomington Housing Code, which is incorporated into the lease as a matter of law, see Miller, 643 N.E.2d at 929, requires Abodes to maintain the walls of its apartments in a good condition and to eliminate all peeling paint. According to Castillo–Cullather, if Abodes is permitted to charge the tenant for painting the walls, it is essentially waiving the requirement imposed on it by housing code. We disagree. Although the rental agreement in the present case allows Abodes to charge Castillo–Cullather for painting the walls, it does not relieve Abodes from its responsibility of ensuring that the walls of the apartment are in a safe and clean condition. Rather, it merely allows Abodes to charge her for damages she caused to the walls. Further, we note that Castillo–Cullather has failed to point to anything in the housing code which expressly prohibits a landlord from delegating the responsibility for painting the walls to the tenant and fails to provide any public policy reason justifying such a prohibition. Under these circumstances, we find Castillo–Cullather's argument unpersuasive.

"ordinary wear and tear," the tenant is not only informed of the landlord's reasons for making deductions from the rental agreement, but also provided with an objective standard to determine if the landlord's deductions are justified. In light of these circumstances, we conclude that the trial court properly determined that Abodes was entitled to deduct charges for painting, carpet-cleaning and general cleaning from Castillo–Cullather's security deposit.

■ Finally, we note that the trial court properly denied Castillo–Cullather's request to shift the burden of proof to Abodes to show that its deductions from her security deposit were for damages exceeding normal wear and tear. By signing the rental agreement in the present case and consenting to the method to determine wear and tear, Castillo–Cullather agreed that Abodes could deduct damages from her security deposit due to her noncompliance with the rental agreement. Inasmuch as Castillo–Cullather now challenges Abodes' deductions, it was incumbent upon her to prove that Abodes' actions constituted a breach of their agreement. We find no error.

### III. Painting Deduction

Next, Castillo–Cullather contends that the amount deducted from her security deposit for painting was improper. Specifically, she argues that Abodes improperly charged her for painting all of the walls in the apartment because several of the walls had been damaged by water leaks, which Abodes was responsible for repairing. Additionally, she argues that the evidence did not support a $140 charge for painting the apartment.

As previously stated, the trial court's judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan*, 572 N.E.2d at 1320. A finding of fact is clearly erroneous when there is no evidence or inferences drawn therefrom which support it. *In the Matter of M.B.*, 666 N.E.2d at 76. In determining whether the findings or judgment are clearly erroneous, we do not reweigh the evidence or reassess the credibility of the witnesses; rather, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *DeHaan*, 572 N.E.2d at 1320.

Notwithstanding Castillo–Cullather's arguments to the contrary, we cannot conclude that Abodes improperly charged her for painting all of the walls in the apartment. Here, the lease agreement specifically stated that in order to maintain the good condition of the walls, an entire wall would be painted if any portion of the wall needed to be repaired. R. at 175. Further, the move-out inspection from indicated that there were scuffs and other marks on the walls throughout the apartment. R. at 179. Therefore, regardless of the water stains, we cannot conclude that Abodes unfairly charged Castillo–Cullather for painting the walls.

Similarly, we cannot conclude that the amount deducted for painting the apartment was improper. Although the receipt from the painting contractor in the present case only indicated a cost of $120, rather than the $140 charged to Castillo–Cullather, Jeff Kleiner, Abodes' maintenance manager, testified that the receipt was only for the labor involved in painting the apartment. R. at 164. Kleiner then testified that the paint cost an additional $20, for a total cost of $140. R. at 164–65. As a result, we cannot conclude that the trial court erred in determining that the amount of the deduction from the security deposit for painting was proper.

### IV. General Cleaning Deduction

Castillo–Cullather also challenges Abodes' general cleaning deduction. Specifically, she argues that the general cleaning charge was unjustified because she returned the apartment to Abodes in good condition, as required by the lease. In support of her argument, Castillo–Cullather relies on the statement made by Abodes' property manager, Liz Hennessey, who indicated during the move-out inspection that the apartment was in good condition. Alternatively, Castillo–Cullather argues that the lease is ambiguous as to what constitutes a good condition. Because the lease was written by Abodes, Castillo–Cullather argues that this ambigui-

ty should be construed against it to prohibit a deduction for cleaning the apartment.

Initially, we note that although the record reveals that Hennessey informed Nick Cullather that the apartment was in good condition during the move-out inspection, the record also indicates that Hennessey noted on the inspection form that several rooms and appliances in the apartment required further cleaning before it would be ready for occupancy by a future tenant. Further, Hennessey testified at trial that in informing Nick that the apartment was in good condition, she did not mean to imply that all necessary cleaning had been completed; rather, she meant that the apartment was in good condition as compared to other apartments which she had recently inspected. R. at 140. Based on the inspection form and Hennessey's testimony, we cannot conclude that the trial court erred by failing to find that Castillo–Cullather had complied with the cleaning provision of the rental agreement.

 Additionally, we cannot conclude that Abodes was prohibited from charging Castillo–Cullather for cleaning because the lease failed to specifically define what constitutes "good condition." In interpreting a contract, particular words and phrases cannot be read alone; rather, the parties' intentions must be determined from considering the contract as a whole. *Buck v. Banks*, 668 N.E.2d 1259, 1261 (Ind.Ct.App.1996). *Id.* Here, the preceding sentence of the "good condition" provision states that the tenant is required to keep the premises clean. Clean is commonly defined as "free from dirt or pollution." WEBSTER'S COLLEGIATE DICTIONARY 246 (9th ed. 1988). As such, the lease clearly required the tenant to return the apartment in a condition free from dirt and other pollution. Despite this requirement, the inspection form indicates, and both Hennessey and Kleiner testified, that there was grime and "splat" in the kitchen, that several appliances needed to be sanitized and that the blinds throughout the apartment were dusty. Under these circumstances, the trial court did not err by finding that Castillo–Cullather failed to keep the premises clean or return it in a good condition. Thus,

Abodes properly deducted charges for cleaning.

Finally, Castillo–Cullather contends that Abodes was precluded from charging her for cleaning the apartment because it failed to provide sufficient notice of the charge, as required by the Security Deposit statute. In its written notice, Abodes informed Castillo–Cullather that she would be charged $26 for general cleaning to prepare the apartment for the next tenant. At trial, however, Abodes offered into evidence records which indicated that four workers had spent a total of twenty-four hours cleaning two apartments, including Castillo–Cullather's apartment, at a total cost of $216. Other than a notation indicating "eight hours/each," nothing in the record indicates how much time was spent cleaning each apartment. Due to Abodes' failure to specifically explain how the cleaning charges were calculated, Castillo–Cullather argues that the Abodes is prohibited from deducting these cleaning charges from her security deposit.

██ IND.CODE § 32–7–5–14 provides that a landlord who makes deductions against a tenant's security deposit must provide the tenant with an itemized list of its deductions, "including the estimated cost of repair for each damaged item and the amounts and lease on which the landlord intends to assess the tenant." The purpose of this requirement is to inform the tenant of the landlord's reasons for retaining the deposit and give the tenant an opportunity to challenge the costs for which the deposit is being used. *Meyers v. Langley*, 638 N.E.2d 875, 878–79 (Ind.Ct. App.1994).

██ Here, the notice Abodes sent to Castillo–Cullather indicated that she was being charged $26 for cleaning of the apartment. As a result, it informed her of the reason for the deduction and the amount of the charge. Therefore, it satisfied the notice requirement under the Security Deposit statute. *See Id.* (letter informing tenant of general costs of materials and labor to fix bathroom, several doors and glass in apartment satisfied notice requirement). Further, although the invoice submitted by Abodes is confusing, it appears to indicate that a minimum of eight hours was spent cleaning each apartment. As a

result, Abodes could have charged Castillo–Cullather considerably more than $26 for cleaning the premises. Under these circumstances, we find no error.

### V. Attorney's Fees

Finally, Castillo–Cullather contends that the trial court erred by failing to award her attorney's fees. Pursuant to section 16 of the Security Deposit statute,[6] a landlord who fails to provide written notice to a tenant within forty-five days of the termination of the tenancy or who fails to return the appropriate security deposit is liable to the tenant for the amount improperly withheld from the security deposit, court costs and reasonable attorney's fees. Based on this section, Castillo–Cullather argues that the trial court was required to award her attorney's fees for the $13.45 improperly deducted from her security deposit.

In support of her argument, Castillo–Cullather relies on this court's recent decision in *Rueth v. Quinn,* 659 N.E.2d 684 (Ind.Ct.App. 1996), *trans. denied,* in which we affirmed the trial court's award of attorneys' fees to the tenants based on the landlord's failure to return the appropriate amount of the security deposit. In particular, we noted that the attorney's fees were justified because the landlord miscalculated the arrearage in rent by approximately $300 and unfairly charged the tenants an additional $160 for damages that were not their fault. In reaching this decision, we specifically noted as follows:

> Because a landlord is in a superior position to determine a tenant's damages, we find that when: 1) a landlord erroneously calculates the tenant's damages, 2) the tenant resorts to legal action to collect all or part of his deposit, and 3) the tenant was entitled to a return of all or part of the tenant's deposit, the landlord has not complied with the notice requirement of the statute. Further, in such cases ... the tenant is entitled to recover the security deposit due the tenant and reasonable attorney fees.

*Id.* at 689. However, we also noted that the award of attorney's fees is within the trial court's sound discretion, which would only be overturned for an abuse of that discretion. *Id.* at 690.

Unlike *Rueth,* the judgment in the present case only involved a nominal award for the tenant, which was primarily the result of clerical error. R. at 170–71. During trial, Abodes readily acknowledged the mistake and admitted that Castillo–Cullather was entitled to a refund for that portion of her security deposit. As a result, the parties expended the bulk of their time and effort during trial on other issues, which were resolved in Abodes' favor. Given the nominal amount of the judgment in the present case and the basis for the award, we cannot conclude that the trial court abused its discretion by failing to award Castillo–Cullather any portion of the $3,941.25 she claims in attorney's fees.

### CONCLUSION

In sum, we hold that the trial court properly determined that Abodes' deductions from Castillo–Cullather's security deposit were lawful under both section 12 and section 13 of Indiana's Security Deposit statute. We also conclude that the trial court properly determined the amount of the deductions for painting and general cleaning and did not abuse its discretion by denying Castillo–Cullather's request for attorney's fees.

Judgment affirmed.

GARRARD and RUCKER, JJ., concur.

---

6. IND.CODE § 32–7–5–16.